PARKER ET AL. V. PEOPLE.

CONSTITUTIONAL LAW — CRIMINAL LAW — GRAND JURIES — PETIT JURIES — JUDGMENT — PRACTICE.

1. STATES MAY REGULATE THE NUMBER OF GRAND JURORS.— Constitution of the United States, amendment 14, providing that no person shall be deprived of life or liberty without "due process of law," does not prohibit a state from authorizing a grand jury consisting of less than the common-law number of jurors.

2. RECORD OF IMPANELING GRAND JURY.— It is sufficient if the record of the term once shows the proper selection and impaneling of the grand jury, and it need not be repeated in the record of each indictment found.

3. SAME — WHEN REGULARITY OF PRESUMED.— Where the whole record is not brought up on appeal it will be presumed, in the absence of anything to the contrary, that the preliminary proceedings relative to the impaneling of the grand jury were regular.

4. CONSTRUCTION OF CONSTITUTIONAL PROVISION RELATING TO COURTS OF SAME CLASS OR GRADE.— Constitution, article 6, section 28, which provides for uniformity in organization, proceedings and practice among all courts of the same grade, is not violated by Laws of 1883, page 160, section 22, which provides that only half as many petit jurors need be drawn in criminal courts as is required by law in the district courts of the same counties, the two courts not being of the same grade.

5. CUMULATIVE SENTENCE ON TRIAL OF CONSOLIDATED INDICTMENT.— A cumulative sentence of imprisonment for a period not exceeding in the aggregate the maximum term fixed for a single offense, imposed by a judgment rendered on a number of indictments for felony which have been consolidated for trial only, is valid.

6. Defendants cannot complain of such a consolidation made on their own motion.

7 AN INDICTMENT MAY CONTAIN COUNTS FOR DIFFERENT OFFENSES.— One indictment may contain a count for burglary and one for larceny, or counts for burglary and receiving stolen goods.

8. RECORD FACTS PRESUMED IN ABSENCE OF OBJECTIONS.— The record need not affirmatively show that the defendant has been served with a copy of the indictment and a list of the jurors and witnesses, as provided by statute, since, if no objection is made in the trial court, it will be presumed that the law was followed.

*Error to Criminal Court of Arapahoe County.*

PLAINTIFFS in error were indicted for several criminal offenses at the January, A. D. 1886, term of the district court of Arapahoe county, and the cases thereafter transferred to the criminal court of said county for further proceedings according to law. In the criminal court the cases were consolidated for trial at the request of the defendants, and a trial thereafter had of all the cases to the same jury, which resulted in a verdict of guilty in three of the cases; and a verdict of not guilty in the remainder. A motion for a new trial having been overruled, the court imposed a distinct sentence upon each conviction, the aggregate term of such sentences being seven years' imprisonment in the penitentiary for each defendant; the sentence in each subsequent case after the first to commence immediately upon the expiration of the term of sentence upon the next preceding conviction. To reverse these judgments this writ of error has been sued out.

Mr. H. B. O'REILLY, for plaintiffs in error.

SAM JONES, attorney-general, and Mr. H. RIDDELL, for the people.

MR. JUSTICE HAYT delivered the opinion of the court.

We will consider the questions raised by the numerous assignments of error in the order in which the same have been presented by counsel.

By the first assignment of error the regularity of the selection and impaneling of the grand jury finding the indictments is questioned. The only record which we have before us of the proceedings in the district court is the one made out and filed in the criminal court at the time of the change of venue from the former to the latter. This record, after showing that the district court was regularly in session at the time for the transaction of general business, the proper officers being present, contains the following entries in case No. 3,173, and substantially the same entries in each of the other cases, to wit: "The People, etc. versus John R. Parker et al.— 3,173. Burglary, etc.— Be it remembered that heretofore, and on, to wit, the 5th day of February, the same being one of the regular juridical days of the January term of said court, the following proceedings were had and entered of record in said cause, to wit: At this day come the members of the grand jury, heretofore impaneled and sworn, and present to the court here the following true bills of indictment, to wit: 'The People, etc. versus John R. Parker, George Cushman and Charles Wilbur.— 3,173. Burglary and Larceny.' Indorsed: 'A true bill.' FREDERICK J. BURTON, Foreman of Grand Jury."

April 13, 1886, there is this entry of record: "The People, etc. versus John R. Parker, George Cushman and Charles Wilbur.— 3,173. Burglary and Larceny.— At this day comes Ledru R. Rhodes, district attorney, who prosecutes the pleas of the people in this behalf, and the said defendants are brought into court; and it appearing to the court that the said defendants are in custody, it is ordered by the court that this cause be removed and certified to the criminal court of Arapahoe county, in accordance with the statute in such case made and provided."

This record, while quite inartificially drawn, is in substantial compliance with the act authorizing the transfer

of cases from the district court to the criminal court of the same county. By this act the clerk was not required to transmit in each case the proceedings in reference to either the selection or impaneling of the grand jury, or any proceedings in the former court anterior to the finding of the indictment.

We have, however, in this record sufficient to show that the grand jury returning this indictment had been previously impaneled and sworn under the supervision of the court, and certainly the presumption is warranted that the grand jury was organized according to law, although the preliminary record is not before us. *Wilson v. People*, 3 Colo. 328.

The plaintiffs in error were defended by able counsel in the court below, who would have been swift to take advantage of any irregularity in the selection or impaneling of the grand jury finding the indictment, if any such existed, knowing the law to be that when such irregularity does not affirmatively appear from the record it must be taken advantage of by plea before trial, and cannot be raised for the first time in the appellate court (Whart. Crim. Law, § 469; Bish. Crim. Proc. 887, 888); and it is a significant fact that no such objection was urged in the court below at any stage in the proceedings. It is not necessary that the record of the formation of the grand jury should be repeated in each case. No good purpose would be accomplished by such unnecessary repetition. It is sufficient if such record be made once as a part of the permanent record of the term. Mr. Bishop, in his excellent work upon Criminal Procedure, says: "Looking at the matter as one of principle, there can be no doubt that, as a question of propriety and good order, there ought to be a record made by the clerk of the appointment of foreman of the grand jury, together with the names of the grand jurors, and this should become a part of the permanent record of the term, but should not be repeated in the special record of each par-

ticular case. Yet, suppose such a thing is omitted from the general record, can each particular person who is indicted take advantage of the omission, and have the proceedings against him reversed? There appears to be no good reason why he should, especially if the court is one of general jurisdiction. And that he cannot is probably the better law, as seen in the midst of somewhat conflicting adjudications." 1 Bish. Crim. Proc. § 1172.

If plaintiffs in error in good faith desired a review of the proceedings had upon the formation of the grand jury, they should have brought the whole record up. There is no pretense on their part that the record does not exist. And it is a matter of astonishment that they should now gravely urge a review of the proceedings without presenting a transcript of the entire record. Upon the record as presented, the first assignment of error must be overruled.

The record does not show that the plaintiffs in error were furnished with a copy of the indictments or a list of the jurors before arraignment, and this is assigned as error.

It is provided by statute that "every person charged with murder or other felonious crime shall be furnished, previous to his arraignment, with a copy of the indictment and a list of the jurors and witnesses." Gen. St. § 953. Complaint is made in this case not on account of a failure to comply with the statute, but for the reason only that the record does not affirmatively show such a compliance. The statute does not designate the officer or person to make the service, and it does not provide that the court record shall show that such service has in fact been made. Many of the trial courts of the state have for convenience adopted the practice of having the record affirmatively show that the service has been had prior to arraignment, but we know of no rule of law requiring this to be done.

Again, no objection was made in the court below on

account of any failure to comply with the statute, and the presumption not only arises that the trial court proceeded regularly, but it has been expressly held that the defendant will be held to have waived his statutory right to a copy of the indictment and to be furnished with a list of jurors and witnesses previous to arraignment by going to trial without making the objection.  *Minich v. People*, 8 Colo. 440, and cases cited.

In some of the indictments upon which the defendants were put upon trial counts for burglary and larceny were joined, and in others counts for burglary and receiving stolen goods.  Here again no objection to such joinder was made in the court below; and if the counts had been improperly joined, in the absence of such objection such misjoinder was thereafter cured by the verdict finding the defendants guilty upon only one count.  However, had objection been made earlier, it could not have prevailed, as under the authorities counts for burglary and larceny may be joined in one indictment, and also counts for burglary and receiving stolen goods.  Archb. Crim. Pl. & Pr. (Pom. Notes), p. 295, note 1; Whart. Crim. Law, § 420.

The cases were consolidated for trial, and this is assigned for error.  The record entry of the order of consolidation, after entitling the causes, is as follows, to wit: "At this day come the parties by their attorneys respectively, and thereupon the motion of the said defendants, cases numbering 1,015, 1,016, 1,017, 1,018 and 1,019 be consolidated for trial, which is accordingly done."

While this order is not very happily expressed, it shows that the cases were consolidated for trial upon motion of the defendants.  Why the consolidation was asked we are not advised.  It may have been for the purpose of saving expense to the defendants, or for some expected benefit to arise to them from having all the cases submitted to a particular jury.  It is sufficient for the purposes of the case for us to know that the consoli-

dation was ordered to accommodate the defendants; and they cannot be heard to complain of the action of the court induced by their request.

Plaintiffs in error having been found guilty upon different indictments, distinct sentences were entered upon each conviction, and for this error is assigned.

In support of this position counsel confidently rely upon the decision in the *Tweed Case*, reported in 60 N. Y. 559. In that case Tweed had been charged in one indictment with two hundred and twenty violations of law, contained in as many counts,— separate misdemeanors committed in one course of criminal conduct. The trial resulted in a conviction upon two hundred and four of these counts, and the court imposed a distinct sentence for each offense; the sentence upon the first count being the maximum punishment fixed for one offense under the law. Tweed, after serving out this first sentence, was set at liberty by the court of appeals. The court did not hold, however, that only one punishment could be inflicted, but that the sum of all the punishments could not exceed the maximum fixed by the statute for a single conviction; but it was expressly decided that if separate indictments had been presented the defendant might have been tried upon each, and, if convicted, the maximum punishment would have been allowable upon each conviction. The doctrine announced in the *Tweed Case* has called for the severest criticism from our ablest criminal-law writers, and is contrary to the weight of authority both in England and in this country. Moreover, an examination of the opinion of the court will show that the principles announced can have no application to the case here under consideration. In this case separate indictments were returned, which were consolidated at the request of defendants for the purpose of trial only, while the aggregate of all the sentences imposed is less than that allowable under the statute upon any one of the convictions. The cases were

consolidated for the purpose of trial only, and, after the trial was over, the cases stood for judgment the same as if separate trials had been had; and the court committed no error in passing sentence upon each conviction. Gen. St. § 2590; 1 Bish. Crim. Proc. § 1327; Whart. Crim. Law (7th ed.), § 3413 *et seq.; Williams v. State,* 18 Ohio St. 46.

What we have said in reference to the preliminary proceedings in selecting the grand jury applies with equal force to the petit jury. If plaintiffs desired the record reviewed upon this writ of error, they should have brought the entire record up. It does not appear that there was any challenge or other objection to the jury made in the court below, and we must assume that the law in reference to the preliminary proceedings was complied with. It is contended, however, that the statute then in force, providing for the selection of petit jurors to serve in the criminal courts, is unconstitutional. The following is the statute the constitutionality of which is challenged, to wit: Sec. 22. "It shall be the duty of the board of county commissioners of the county wherein any criminal court is established to select and certify to the clerk of said court the names of persons qualified to serve as jurors in the same manner as they are required by law to select and certify the names of persons qualified to serve as jurors in the district court, and in case of the failure of such board so to do the judge of said criminal court shall have the power to cause jurors to be summoned by an open *venire,* as necessity may require; and in general the law relating to the selection of jurors for the district courts and the powers and duties of the district courts, and the judges thereof, as therein defined, shall be applicable to and may be exercised by the criminal courts and the judges thereof, so far as not inconsistent with this act; provided, however, that the said commissioners need not select or certify more than half as many names of persons to serve as jurors for each term of any criminal court as they are now required to

do for the district court of the same county; and provided further, that the commissioners need not select and certify such names more than thirty days before the time appointed for holding the criminal court in such county, and the clerk of the criminal court need not draw the names of persons to serve as jurors in the criminal court more than twenty days prior to the term of the court at which they are to serve." Sess. Laws 1883, p. 160.

Plaintiffs contend that this statute is in violation of the rule of uniformity of practice established by the constitution, as well as obnoxious to the constitutional inhibition against local or special laws. A comparison of this act with the general statute in reference to jurors discloses that the only essential difference between the two acts arises out of the provisos contained in the former, by the first of which provisos the number of names to be selected in the first instance is reduced one-half, while by the other the time in which certain acts are to be performed is reduced. The tribunal empowered to make the selection, as well as the manner provided for making the same, is not changed.

Under the general act provision is made for the summoning of successive panels of petit jurors, as the business of the court may require, it being provided therein for the selection of a larger number of names in counties having a larger voting population, and presumably a greater amount of business to come before the courts, than in counties where a less number of votes are polled.

Under this law it becomes the duty of the board of county commissioners to select three hundred names in the first instance, from which successive panels of jurors are to be drawn for the district court of Arapahoe county, with its several departments, each presided over by a different judge, while but one hundred and fifty names are to be selected for the criminal court, with its limited business and single judge. The reason for such a distinction is apparent. It is said, however, that the stat-

ute authorizing the latter practice cannot be upheld in view of the doctrine announced by the court in *Re Lowrie*, 8 Colo. 499. The question arose in that case as to the right of the legislature to provide for the prosecution of felonies by information in criminal courts, leaving the proceeding by indictment in other courts, and the court held that this could not be done; that the constitutional provision empowering the legislature "to change, regulate or abolish the grand jury system" must be construed with reference to the provision found in section 8, article 2, of the same instrument, viz., "that, until otherwise provided by law, no person shall for a felony be proceeded against criminally otherwise than by indictment, * * *" and that, when so considered, it must be held as authorizing the entire substitution of the former practice for the latter, but not a substitution as to particular courts only. The able opinion in that case shows that the provisions for a change are but recognitions of the fact that the administration of the criminal laws must change from time to time with the progress of society and the advancement of legal science; while, in continuing the grand jury system until such change should be made, the fact is recognized that among all the plans for securing the just and uniform administration of the criminal laws the grand jury system has for ages held the most conspicuous place in English-speaking communities, and that therefore it could not have been intended to authorize the legislature to treat the system as of such slight importance as to leave the manner of procedure to the chance of locality, or the choice of systems to the discretion of certain officers, as would necessarily result from the act under consideration. In the language of the court: "But the people conferred on that body no power to abolish the institution as to one man, leaving it in force as to another; no power to abolish it as to one county, and not as to all counties; and certainly no power to enact a law which would, to any extent, leave it to

the discretion of district attorneys or examining magistrates whether an individual should have the advantage, of an investigation by a grand jury or be put to a public trial without such investigation."

No such objectionable consequences as those pointed out by the court as necessarily following from the act then under consideration can result from the portion of the act now challenged. Under this law the defendant's right to a trial before a common-law jury of the vicinage is protected, and we cannot say that he has a constitutional right to have three hundred or any other particular number of names selected in the first instance from which the panel for the term is to be drawn, or that the proviso permitting a less number of names to be selected from which the drawing for the criminal courts is to be made than for the district courts is in conflict with the uniformity required by the constitution in "the organization, jurisdiction, powers, proceedings and practice of all the courts of the same class or grade, so far as regulated by law." Art. 6, § 28. The criminal courts are obviously not of the same class or grade as the district courts. This was expressly decided in the case of *In re Lowrie, supra;* consequently the constitutional provision quoted can have no application here.

Under our constitution the right of trial by jury in criminal cases cannot be dispensed with or abridged; and while it is undoubtedly true that the right guarantied is the right of trial by a common-law jury of twelve persons, it is certainly within the scope of legislation to reasonably regulate such right, and we can discover nothing in the fundamental instrument limiting the power of the legislature to designate the manner in which persons competent for jury duty are to be selected in the first instance. This subject has always been under legislative control, and we see no substantial objection to the regulation prescribed in the statute of 1883. It is a general law applicable to all the criminal courts in

the state, and must be held valid as against the constitutional objections interposed. Proff. Jury, § 121 *et seq.*

What has already been said disposes of the objections urged to the curtailing of the time at which the selection may be made. Aside from this, such directions have never been held as mandatory; and if through some default or omission a selection is not made at the regular time, it may be made afterwards, provided a reasonable time be given the officers in which to serve the writ before the jurors are required to serve. Id. § 125.

Finally, it is claimed that the words "due process of law," as used in the fourteenth amendment of the federal constitution, necessarily require an indictment in all prosecutions for felonies by a grand jury formed as at common law, and that the portion of our state constitution providing for an indictment by a lesser number of grand jurors is in conflict therewith. The court of last resort in the country has spoken upon this question, and its decision is against the argument now advanced. In the case of *Hurtado v. California*, 110 U. S. 516, the authority of a state to authorize prosecutions for felonies by information, without indictment by a grand jury, is expressly upheld, and therefore the states may modify the system between the two extremes.

After a careful examination of all the assignments of error we see no reason for disturbing the sentences imposed by the trial court.

<div align="right">

*Affirmed.*