## HOWARD v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.   July 8, 1896.)

### No. 434.

1. DEFECT IN MITTIMUS—EFFECT.

Rev. St. § 1028 (providing that, when a prisoner is committed to a sheriff or jailer by virtue of a writ, warrant, or mittimus, a copy thereof shall be delivered to such sheriff or jailer, as his authority to hold the prisoner), does not render a prisoner's detention unlawful because of a defect in such copy, which is merely evidence of the judgment and sentence on which the detention is based.

2. HABEAS CORPUS—PETITION.

A petition for a writ of habeas corpus which does not impeach the judgment or the original mittimus, directed to the marshal, under which petitioner was actually committed, is bad.

3. FEDERAL COURTS—CRIMINAL PROCEDURE.

The United States courts are governed in the administration of the criminal law by the rules of the common law.

4. CUMULATIVE SENTENCES.

By the common law, cumulative sentences may be imposed, the imprisonment under one to commence on the termination of that under another.

5. SAME.

A sentence of imprisonment to commence upon the expiration of a preceding sentence is not uncertain because by Rev. St. § 5544, as amended by Act March 3, 1875, convicts who are chargeable with no misconduct are entitled to a good-time credit on their sentences.

6. MISUSE OF MAILS—CRIMINAL PROSECUTION.

Rev. St. § 5480, provides that the indictment, information, or complaint in a prosecution for using the post office for a scheme to defraud may severally charge three offenses when committed within six months, and requires a single sentence to be given in such case. Held, that the consolidation of eight indictments charging separate offenses did not, under this provision, in effect make but one case and one indictment, so that the court could pronounce but one sentence upon a conviction in the consolidated cases.

7. SAME—PUNISHMENT.

Nor does such provision require that there shall be but one punishment for all the offenses of this character committed by a person within six months.

8. HABEAS CORPUS PROCEEDING.

The action of the court in consolidating indictments is not open to attack on a habeas corpus proceeding.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

Petition by G. F. B. Howard for a writ of habeas corpus.   From a judgment denying the writ, petitioner appeals.

J. D. Brannan, for appellant.

Harlan Cleveland, U. S. Atty., in support of the power in the court to pronounce cumulative sentences, referred to the following authorities:

Rex v. Wilkes, 4 Burrows, 2578, 19 Howell, St. Tr. 1133, 1134;  Rex v. Robinson, 1 Moody, Cro. Cas. 413;  Rex v. Cutbush, L. R. 2 Q. B. 379;  Castro v. Queen, 6 App. Cas. 229;  William's Case, 1 Leach, 536;  1 Chit. Cr. Prac. 718;  O'Connell v. Queen, 11 Clark & F. 377;  Gregory v. Queen, 15 Adol. & E. 974;  Com. v. Sylvester, Brightly, N. P. 331;  Com. v. Birdsall, 69 Pa. St. 482;  Brown v. Com., 4 Rawle, 259;  Russel v. Com., 7 Serg. & R. 489;  Kite v.

Com., 11 Metc. (Mass.) 585; People v. Forbes, 22 Cal. 136; State v. Smith, 5 Day, 175; In re Jackson, 3 MacArthur, 24; Johnson v. People, 83 Ill. 434; Ex parte Kirby (Cal.) 18 Pac. 655; Bish. Cr. Law, 953; In re Esmond, 42 Fed. 827.

Before LURTON, Circuit Judge, and SEVERENS and CLARK, District Judges.

CLARK, District Judge. Eight indictments were returned against petitioner, Howard, in the district court of the United States for the Eastern division of the Western district of Tennessee, charging him with violations of section 5480 of the Revised Statutes of the United States in the use of the post-office establishment of the United States in the execution of schemes to defraud. The docket numbers of the cases were 1,727, 1,728, 1,729, 1,730, 1,731, 1,732, 1,758, and 1,759, respectively. These cases were, by order of the court, consolidated, and tried at the same time before the same jury. The trial resulted in a verdict of guilty on each of the indictments, and judgment and sentence were pronounced against the petitioner in each of the cases. The sentence in the first case was to 18 months' imprisonment in the Ohio penitentiary and a fine of $500, and, in each of the seven cases following, 13 months' imprisonment and a fine of $100 were imposed, the same to be applied to the indictments in their numerical order. The sentence in the second and each following case took effect at the expiration of the one next preceding. Mittimus issued, regular in form, under each judgment and sentence, directed to the marshal of the Western district of Tennessee, and commanding him to commit the petitioner, Howard, to the Ohio penitentiary at Columbus, in the state of Ohio, to be there imprisoned for the terms fixed in the eight sentences. The defendant was ordered to stand committed until the several fines imposed and the costs of the prosecution were paid. When the defendant had served out the term of imprisonment imposed by the first sentence (the statutory deduction for good time being made), application was made to the circuit court of the United States for the Eastern division of the Southern district of Ohio for a writ of habeas corpus. The petition for the writ alleged as grounds for the prisoner's discharge from custody:

(1) That cumulative sentences, as imposed by the court, were without authority of law and without power in the court. (2) That the sentences, except the first, were too uncertain and indefinite, in that they were made each to take effect upon the expiration of the preceding sentence, which itself was made uncertain, because the question of allowing credit for good time under the statute was discretionary, and not absolute. (3) That the consolidation of the indictments against the prisoner, and his trial on all of them at the same time, was a proceeding unauthorized by law, and the sentences for that reason void.

Due return was made to the writ, with the answer of the warden of the penitentiary. The writ was discharged upon the trial, the petition dismissed, and the petitioner, Howard, remanded to the custody of the warden of the Ohio penitentiary to complete his terms of imprisonment, in accordance with the sentences of the United States district court for the Western district of Tennessee. On appeal to this court, the judgment of the court below was affirmed; whereupon

a second application by petition was made to the same circuit court for the writ. Objections to the sentences were again set out in the petition as grounds for the second application. The only ground for the writ stated in the second petition which is not also contained in the first is based on an objection to the copy of the mittimus in case No. 1,728, which is the second in numerical order of the several mittimuses issued pursuant to the judgment and sentence of the court. What purport to be copies of the original mittimuses are attached to and made part of this petition, and also a copy of the transcript of the judgment of the court is attached to the petition. These copies, it is evident from the petition, are not copies of the originals, but copies of papers in possession of the warden of the penitentiary, which the petition designates as "commitment papers," and which papers are themselves only copies of the originals. So the copies attached to the petition, and made part thereof, are copies of copies, and not of the originals. The objection to the mittimus in case No. 1,728 is that "from date of" is omitted after the words "for the term of thirteen months"; these words being contained in each of the other mittimuses issued, and from which the sentence is clearly made to take effect from date of expiration of the sentence imposed in the case immediately preceding. The position taken is that this omission leaves the period of imprisonment under the sentence in 1,728 without a date for its commencement, and therefore uncertain and void, and that, as the prisoner has served out the first sentence, he is therefore entitled to be released from custody. The petition does not contain any statement that the copy of the mittimus attached thereto is a correct copy from the paper in the possession of the warden of the penitentiary, and, of course, no statement that the same is a correct copy of the original mittimus issued to the marshal, and under which the prisoner was in fact committed. Whether the failure to make the usual statement that the copy is a correct one of the original is entirely due to an oversight would, of course, be matter of conjecture. One or two other minor grounds are alleged as a basis for the application, but they are entirely without merit, and were not insisted upon by the petitioner's counsel on the argument in this court. This petition, which is signed and sworn to by petitioner alone, was, on motion, dismissed by the circuit court, and the case is here again by appeal. The judgment of the court denying the petition is as follows:

"This cause coming on to be heard on the petition of G. F. B. Howard for a writ of habeas corpus, upon consideration, the court finds that the petition shows the prisoner to be in lawful custody, and does not state a case for the issuance of a writ. Wherefore it is ordered that the petition be denied, at the costs of the petitioner. Whereupon the petitioner applies to the court for an allowance of an appeal to the circuit court of appeals for the Sixth circuit from the order denying the petition, which appeal is accordingly allowed, and the clerk is directed to issue a citation upon such appeal to the United States attorney for the Southern district of Ohio, as the representative of the United States, who will be the appellee in the proceedings on appeal in the circuit court of appeals."

It will be seen that the judgment is based on the petition alone and what appears therefrom. The objection based on the omission in the mittimus in 1,728 will be disposed of first.

By section 1028 of the Revised Statutes it is provided:

"Whenever a prisoner is committed to a sheriff or jailer by virtue of a writ, warrant or mittimus, a copy thereof shall be delivered to such sheriff or jailer, as his authority to hold the prisoner, and the original writ, warrant or mittimus shall be returned to the proper court or officer, with the officer's return thereon."

The contention is that under this statute the copy of the mittimus furnished by the marshal to the warden of the penitentiary is made the warden's only authority for detention of the prisoner, and that, the copy in possession of the warden being void on account of the defect mentioned herein, the prisoner's restraint is unlawful. Omitting the direction and proper teste of the mittimus, the body thereof is as follows:

"You are hereby commanded to commit the defendant, Joseph Leger, alias G. F. B. Howard, to the Ohio penitentiary at Columbus, Ohio, there to be imprisoned for the term of thirteen months, the expiration of his term of imprisonment under indictment No. 1,727, in accordance with a sentence of this court pronounced against said defendant on this the 4th day of January, 1894, for the crime of violating the laws of the United States in unlawfully using the mails with intent to defraud."

This contention does not require extended treatment. The warrant or order of commitment is simply an authority and direction to the marshal to take the prisoner to the penitentiary named. The copy furnished by the marshal or clerk to the warden is merely evidence, and evidence only, of the judgment and sentence of the court and the mittimus issued thereunder. The statute makes this evidence of a regular court judgment and mittimus sufficient authority and protection to the warden, and the warden is not required to go beyond this copy in satisfying himself of the existence of a valid sentence against the prisoner. This is the purpose and effect of the copy, and nothing more. The prisoner is not committed by virtue of the copy, but by virtue of the judgment of the court, and the mittimus issued pursuant thereto; the real valid authority under which the mittimus is issued being the sentence of the court.

In People v. Baker, 89 N. Y. 461, Earl, J., said:

"But the relator was not detained, or required to be detained, by virtue of any warrant. He was detained by virtue of the judgment of the court, and that judgment was a sufficient authority for his detention. The warrant of commitment is simply an authority and direction to the sheriff or other officer to convey the prisoner to the penitentiary. That needs not necessarily to be left with the keeper. If he has no other evidence of his authority to detain the prisoner, he should have that. But, if the officer who brings a prisoner to the penitentiary furnished the keeper with a certified copy of the judgment of the court, then that is sufficient evidence of the keeper's authority, and he needs to have no other. A prisoner who has been properly and legally sentenced to prison cannot be released simply because there is an imperfection in what is commonly called the 'mittimus.' A proper mittimus can, if needed, be supplied at any time; and, if the prisoner is safely in the proper custody, there is no office for a mittimus to perform."

This ruling is supported by the previous case of People v. Nevins, 1 Hill, 154, followed and approved by the supreme court of the United States in Ex parte Wilson, 114 U. S. 422, 5 Sup. Ct. 935.

And so in Sennott v. Swan (Mass.) 16 N. E. 448, Knowlton, J., giv-

ing the opinion of the supreme judicial court of Massachusetts, and answering a similar formal objection to the mittimus, observed:

"Besides, we have the judgment before us. The imprisonment rests upon the judgment, and the mittimus is important only as a direction to the officer, and as evidence of the authority which the judgment gives. People v. Baker, 89 N. Y. 460. See, also, Ex parte Gibson, 31 Cal. 620; Ex parte Kellogg, 6 Vt. 511."

Moreover, as will be seen, the copy of the mittimus under 1,728, attached to the petition, refers to the sentence on indictment No. 1,727, and to the sentence of the court pronounced in No. 1,728, giving the character of the crime. The judgment of the court is not only thus referred to, but, as we have seen, a copy of the transcript of the judgment is attached to the petition, and made a part thereof. The judgment appears from this transcript to be regular in all respects, and makes the period of imprisonment, as well as the time of its commencement, clear, and shows that the sentence of the court contains no such defect or omission as that pointed out in the copy exhibited with the petition; and that the omission in the copy furnished by the marshal to the warden is a mere clerical error by the marshal or clerk in making such copy. For each and all of these reasons, we are of opinion that the defect pointed out in the petition furnishes no ground whatever for the writ, and is entirely without merit. A petition which does not impeach the judgment or original mittimus, directed to the marshal, under which petitioner was actually committed, states no case for the writ. On the trial of the first petition, a full transcript of the record in the court of original jurisdiction was introduced, and was on file in the court below at the time of the judgment on the second petition, and a copy is also on file in this court. From this it fully appears that the original sentences and the original mittimuses issued thereunder are in all respects regular; and it is argued that the court below might look to that transcript, and that, in support of the judgment below, this court may also inspect the transcript on file in this court. The disposition thus made of the objection, based on the defective copy, renders it unnecessary to decide this point. As has been seen, the action of the court below was based upon the petition alone and the papers attached thereto; and, in reviewing the judgment of the court below, we do not think we are at liberty to dispose of the case on matter appearing in a record different from that on which the judgment below was based.

This brings us to the question of the right and power of the court to impose cumulative and successive sentences. This question may arise in a given case upon a conviction on different counts in the same indictment charging distinct offenses, or upon conviction at the same term on separate indictments for distinct offenses. The principle involved is, however, the same as the right to join distinct offenses in different counts in the same indictment is to avoid, to both parties, the burden and expense of two or more separate trials. If this question depended upon the law of the state where the petitioner was tried, there is a statute expressly authorizing cumulative sentences. Code Tenn. § 5228; Mitchell v. State, 92 Tenn. 672, 23 S. W. 68. In the absence of an act of congress upon the subject, how-

ever the courts of the United States in the administration of the criminal law are governed by the rules of the common law. U. S. v. Nye, 4 Fed. 888; Erwin v. U. S., 37 Fed. 488; U. S. v. Maxwell, 3 Dill. 278, Fed. Cas. No. 15,750. And there can be no question of the power of the court to impose cumulative sentences for separate offenses, according to the very decided weight of authority at the common law. Rex v. Wilkes, 4 Burrows, 2578; Castro v. Queen, 6 App. Cas. 241 (Tichborne Case); 1 Chit. Cr. Law, 718; Clark, Cr. Proc. 495; U. S. v. Patterson, 29 Fed. 775; In re Esmond, 42 Fed. 827; Blitz v. U. S., 153 U. S. 308, 317, 14 Sup. Ct. 924.

In Blitz v. U. S., the defendant was convicted on an indictment containing three separate counts, in which he was charged, in the first count, with personating and voting in the name of another; in the second, with voting at a precinct where he was not lawfully entitled to vote; and, in the third, with voting for the same candidate more than once; and a verdict of guilty was returned upon each count of the indictment. A motion in arrest of judgment was sustained as to the second count of the indictment, and overruled as to the first and third counts, and the defendant was sentenced on the first count to imprisonment in the penitentiary for one year and a day, and on the third count for a like period, beginning upon the expiration of the sentence on the first count. The supreme court of the United States held that the motion in arrest of judgment should have been sustained also as to the first count in the indictment, and affirmed the judgment as to the third count, and directed that the term of imprisonment under the third count should be held to commence on the day named for the commencement of the first term. As judgment was pronounced on both the first and third counts in the court below, the imprisonment under the third count commenced upon the expiration of the judgment on the first count. The contention of the plaintiff in error was that the cause should be remanded, with directions for a new trial. In answering this question, Mr. Justice Harlan, giving the opinion of the court, said:

"In Kite v. Com., 11 Metc. (Mass.) 581, 585, it appeared that the accused was sentenced for a named period to confinement at hard labor, to take effect from and after the expiration of three previous sentences specified. The judgment was objected to as erroneous and void, because there were not three former sentences, legal and valid, and therefore no fixed time from which the punishment on the last sentence should begin. Chief Justice Shaw, referring to this objection, and delivering the unanimous judgment of the court, said that it was not error in a judgment in a criminal case to make one term of imprisonment commence when another terminates. 'It is as certain,' he said, 'as the nature of the case will admit, and there is no other mode in which a party may be sentenced on several convictions. Though uncertain at the time, depending upon a possible contingency that the imprisonment on the former sentence will be remitted or shortened, it will be made certain by the event. If the previous sentence is shortened by a reversal of the judgment or a pardon, it then expires; and then, by its terms, the sentence in question takes effect as if the previous one had expired by lapse of time. Nor will it make any difference that the previous judgment is reversed for error. It is voidable only, not void; and, until reversed by a judgment, it is to be deemed of full force and effect; and, though erroneous and subsequently reversed on error, it is quite sufficient to fix the term at which another sentence shall take effect.' See, also, Dolan's Case, 101 Mass. 219, 223. In these views we concur."

Not only in Blitz v. U. S. were cumulative sentences imposed, but such was also the judgment of the court in Re Henry, 123 U. S. 372, 8 Sup. Ct. 142, and in Re Mills, 135 U. S. 253, 10 Sup. Ct. 762, and in other cases that might be referred to. And, while the authority to pronounce such judgment was not made a specific question in the cases, it was perfectly apparent in the cases that such. practice had been pursued, and the supreme court of the United States, according to its own rules, reserves the right to "notice a plain error not assigned or specified." And, if the courts of the United States be without authority to pronounce cumulative sentences upon convictions of separate offenses, the error was so vital and so obvious in the cases that the court would certainly have felt called upon to notice it in the interest of the accused. Railway Co. v. Warren, 137 U. S. 348, 11 Sup. Ct. 96.

And in Williams v. State, 18 Ohio St. 47, the supreme court of Ohio said:

"To hold that, where there are two convictions and judgments of imprisonment at the same term, both must commence immediately, and be executed concurrently, would clearly be to nullify one of them. To postpone the judgment in one case until the termination of the sentence in the other would, if allowable, be attended with obvious inconvenience and expense, without any correspondent benefit to the convict. There is nothing in the statute requiring this, and it is not to be construed so as to defeat or impede the execution of its own provisions as to the punishment of crimes. We think, both upon principle and the weight of authority, that we are required to hold that it is not error, upon a conviction in a criminal case, to make one term of imprisonment commence when another terminates. There is but little force in the objection that the term of the commencement of the second term is contingent and uncertain. It is true that the first term may be ended by a pardon or a reversal of judgment, but its termination will be rendered certain by the event, and then the second sentence, by its terms, takes effect."

And the supreme court of Nebraska, answering a similar objection, and referring to certain cases cited as supporting the objection, thus expressed its view:

"But, in our opinion, the great weight of authority is in favor of the proposition that upon conviction of several offenses charged in separate indictments, or in separate counts of the same indictment, the court has power to impose cumulative sentences. See Whart. Cr. Pl. § 910; Bish. Cr. Law, § 953; Kite v. Com., 11 Metc. (Mass.) 581; Mims v. State, 26 Minn. 498, 5 N. W. 374; State v. Smith, 5 Day, 175; Petition of McCormick, 24 Wis. 492; In re Fry, 3 Mackey, 135; Ex parte Hibbs, 26 Fed. 421; State v. Robinson, 40 La. Ann. 730, 5 South. 20; Parker v. People (Colo. Sup.) 21 Pac. 1120; Russel v. Com., 7 Serg. & R. 489; Williams v. State, 18 Ohio St. 46; Eldredge v. State, 37 Ohio St. 191; Bolun v. People, 73 Ill. 488." In re Walsh, 55 N. W. 1076.

It is true that cases are to be found holding a contrary doctrine. How far the decisions in such cases may have been influenced by legislation in the particular state we need not now stop to inquire. It is certain that such cases find little or no support in the common law, and certainly none in sound reason. The cases are practically agreed that separate offenses may be included in separate counts of the same indictment. Ingraham v. U. S., 155 U. S. 434, 15 Sup. Ct. 148; Pointer v. U. S., 151 U. S. 396, 14 Sup. Ct. 410.

It is also a recognized method of procedure to consolidate separate indictments and try them at the same time as one case; and

it is not an uncommon thing that the same defendant is convicted of more than one offense at the same term, upon separate indictments and trials. And a rule which denies the court the power to impose cumulative sentences turns the trial and conviction on all the indictments except one into an idle ceremony. It is hardly necessary to say that a rule which leads to such results as this is unsound in principle, and can be supported by no consistent process of reasoning. Under such a doctrine, a defendant convicted of two or a dozen crimes would suffer no greater punishment than a person convicted of one offense, except such difference as the statutory maximum and minimum limits on the sentence might justify. Such a rule finds no justification in law or morals. The other cumbersome and uncertain methods suggested for dealing with the subject would, in effect, result in complete failure.

Counsel for the petitioner relies with much confidence on People ex rel. Tweed v. Liscomb (Tweed's Case) 60 N. Y. 559, and authorities cited therein. The doctrine of this case, however, has met with universal disapproval. Mr. Bishop speaks of it as "a doctrine elsewhere never heard of before, and generally rejected since." And in a note the author further says:

"On the other hand, I have looked into all the cases cited from the books of reports in Tweed's Case, and into such others as seemed to afford any promise of instruction, and I find no one, English or American, ancient or modern, which furnishes a precedent, or an authority, or even a dictum, for the conclusion arrived at by the court." Bish. Cr. Proc. § 1327.

And the supreme court of Colorado, in Parker v. People, 13 Colo. 155, 21 Pac. 1120, said:

"The doctrine announced in the Tweed Case has called for the severest criticism of our ablest criminal law writers, and is contrary to the weight of authority both in England and in this country."

The Tichborne Case was one much considered by the English courts. The writ of error in the case was allowed by the attorney general out of respect to the ruling by the New York court in Tweed's Case. The case went first before the court of appeals, and on further appeal before the house of lords. The question of the soundness of the decision in Tweed's Case was therefore directly before the English courts. The decision was regarded by those courts as somewhat startling, and it was said, in effect, that, while the case might be good as American authority, the law of England was certainly otherwise. The English judges seem to have considered Tweed's Case only, and not to have been aware at that time that the weight of American authority was also against the ruling in that case.

We think the power thus to pronounce cumulative sentences exists in regard to felonies, as well as misdemeanors, although in the case at bar we are dealing with the misdemeanor grade of offense only. Reagan v. U. S., 157 U. S. 303, 15 Sup. Ct. 610; Bannon v. U. S., 156 U. S. 464, 15 Sup. Ct. 467.

We now come to the question of whether all of the sentences except the first were void for uncertainty. So far as this objection may be rested upon the ground that the second and subsequent sentences do not fix the date of commencement more definitely than as

beginning at the expiration of the preceding sentence, the cases already referred to contain a sufficient answer. The real point of objection, however, as we understand counsel for petitioner, is this: That the sentences, except the first, are rendered uncertain by reason of the provisions of section 5544 of the Revised Statutes, as amended by the act of March 3, 1875 (13 Stat. 479), providing for a good-time credit on the sentences of convicts who are chargeable with no misconduct during the time of their imprisonment. The contention is that, as this may or may not be allowed, the precise time when the first or any subsequent sentence will expire, and the sentence next in order begin, cannot be certainly known. This objection is hardly thought to deserve elaborate consideration. There is no uncertainty by reason of this in the judgment and sentence. That is for a definite fixed time; and the statute is mandatory, giving the convict a right to the credit for the good time, provided his conduct has been such as to deserve it; and it is made the positive duty of the warden of the penitentiary, if the conduct of the convict has been good, to enter a certificate on the warrant of commitment showing the fact. The time fixed by the sentence of the court remains just as fixed until the time expires, less the deduction for good time, when the fact whether the sentence is to be cut down is determined by inspection of the certificate on the warrant of commitment. There is practically no uncertainty in this to the ordinary apprehension, except such uncertainty as may exist by reason of doubt as to what the conduct of the convict will be. The justices of the supreme judicial court of Massachusetts, in answer to a question calling for their opinion by the governor upon a statute similar to the one now in question, said:

"The first question is whether this act gives a right to the convict to have his term of imprisonment reduced and shortened by such a scale; or, in other words, whether these provisions of law bear upon the sentence, and shorten the term of imprisonment. We think they do. They afford an assurance of the highest character that, upon condition of good behavior, the convict shall have the promised benefit of an earlier release. We are aware that the words are not explicit that the term of imprisonment shall be reduced, but we think they are equivalent. The words are, 'There shall be a scale of deduction from the term of such convict's sentence.' It appears to be equivalent to an express provision that there shall be a deduction from the term of imprisonment, according to the scale so to be formed. According to this construction, the sentence, which is imposed by force of the law, is modified by the present law; so that, prior to the present, the time of imprisonment would be computed according to the words of the sentence, and be discharged at its termination by lapse of time. Under the present, it will terminate by the time declared in the terms of the sentence, diminished by the number of days for which the convict will be entitled to deduction. Such a deduction, especially in the case of long sentences, when it is one-sixth part of the whole, becomes an essential legal element in the sentence itself, by which the convict is held; and the convict, by complying with the terms of the law in maintaining his good conduct, thereby earns a right to the promised benefit. If it be objected that this will render the subsistence of the sentences uncertain, we think not, if the provisions of the act are rightly understood and observed. The scale of deduction is not to depend on any varying or capricious notions which any officers or superintendents of the prison may entertain of the good behavior or good disposition of a convict. It is made to depend upon a fact ascertained by a fixed rule, entered on the journals of the prison, recorded each month; that is, entered in a book permanent in its character, fixed and

unchangeable when once entered. These books of record are always accessible, and, although the officers may all change, the record is there." 13 Gray, 619 (Supp.).

And in Re Walsh, supra, the supreme court of Nebraska said:

"This court has held that, where a person has been convicted of several distinct misdemeanors, it is proper for the court to impose a separate sentence upon each offense of which the defendant is found guilty (Burrell v. State, 25 Neb. 581, 41 N. W. 399); and we know of no reason why the same rule should not apply in convictions for felonies. Where a cumulative sentence is imposed in case a person is convicted of several distinct offenses, the judgment should not fix the day on which each successive term of imprisonment should commence, but should direct that each successive term should begin at the expiration of the previous one (Johnson v. People, 83 Ill. 431); and this for the obvious reason that the prior term of imprisonment may be shortened by the good behavior of the defendant, by executive clemency, or by a reversal of the judgment, in which event the succeeding sentence would then take effect, in case it provided that the term of imprisonment should commence at the termination of the previous one."

If the prisoner's argument were good, it would result that a statute enacted from motives of kindness to him would have the practical effect, to a very large extent, of defeating the administration of the criminal law. The courts must not be expected, upon suggestion of merely speculative difficulties, to announce a rule which would lead to such surprising results as this. So, without further observations upon this branch of the case, we pass to the contention made upon the last clause of section 5480 of the Revised Statutes, upon which the indictments in this case are predicated. The clause is in this language:

"The indictment, information or complaint may severally charge offenses to the number of three, when committed within the same six calendar months; but the court thereupon shall give a single sentence, and shall proportion the punishment especially to the degree in which the abuse of the postoffice establishment enters as an instrument into such fraudulent scheme and device."

The prisoner's argument is that as only three separate offenses may be included in one indictment within the same six calendar months, and in case of conviction only one sentence, the consolidation of the eight indictments had the effect to make but one case, and in effect one indictment, and that the court could, under this provision of the act, pronounce but one sentence upon a conviction in the consolidated cases, and that all of the sentences except the first are therefore absolutely void. The petition, with the papers attached thereto, does not state or suggest that any such question was made or decided by the court of original jurisdiction in which the cases were tried and the sentences pronounced. The objection seems not to have been taken by motion to quash, to compel an election, by plea, request for instruction, or otherwise; and the question is apparently attempted to be raised for the first time in this collateral proceeding. It is well settled that the writ of habeas corpus cannot be made to perform the office of a writ of error, and that the inquiry in such proceeding is not whether there is error in the proceeding and judgment, but whether the judgment is a nullity. It would seem that, in any view of this question, the court has jurisdiction to pronounce such sentence as the law authorized; and, if the

judgment of the court was erroneous, it could only be corrected in a. direct proceeding by writ of error. The proceeding involved merely an interpretation of the law and the application thereof to the facts of the petitioner's case, and this included a determination of the question whether the effect of consolidation was as the prisoner insists. As we prefer, however, to rest our judgment on other grounds, we do not find it necessary to make a ruling upon this question. The main point in this contention, that the effect of consolidation was to make but one case of all the indictments, is an erroneous conception of the law.

In Ex parte Hibbs, 26 Fed. 427, the court observed:

"The act authorizing the joinder of offenses in one indictment, and a consolidation of separate indictments for distinct offenses, was intended to promote the speedy and economical administration of justice in such cases, in the interest both of the government and the offender, and not practically to merge two or more distinct offenses into one for the benefit of the latter."

See, also, In re Haynes, 30 Fed. 771; Bish. Cr. Proc. (4th Ed.) §§ 421, 1042, 1045; Parker v. People, 13 Colo. 155, 21 Pac. 1120; Williams v. State, 18 Ohio St. 47.

Indeed, it would seem to require no reasoning to show that if joining separate offenses in the same indictment does not make them one offense, so as to require but one sentence, a fortiori a consolidation, for the purpose of trial, of separate indictments charging distinct offenses, would not have this effect. So, the very basis on which the petitioner's contention in this respect rests falls to the ground. If petitioner's counsel means by the argument to insist that there can be but one punishment for all offenses committed by a person under this statute within one period of six calendar months, the reply is that it was otherwise held in Re Henry, 123 U. S. 374, 8 Sup. Ct. 142. In that case the court said:

"We have carefully considered the argument submitted by counsel in behalf of the petitioner, but are unable to agree with him in opinion that there can be but one punishment for all the offenses committed by a person under this statute within any one period of six calendar months. As was well said by the district judge on the trial of the indictment: 'The act forbids, not the general use of the post office for the purpose of carrying out a fraudulent scheme or device, but the putting in the post office of a letter or packet, or the taking out of a letter or packet from the post office, in furtherance of such a scheme. Each letter so taken out or put in constitutes a separate and distinct violation of the act.' It is not, as in the case of In re Snow, 120 U. S. 274, 7 Sup. Ct. 556, a continuous offense, but it consists of a single isolated act, and is repeated as often as the act is repeated. It is, indeed, provided that three distinct offenses, committed within the same six months, may be joined in the same indictment; but this is no more than allowing the joinder of three offenses for the purpose of a trial. In its general effect this provision is not materially different from that of section 1024 of the Revised Statutes, which allows the joinder in one indictment of charges against a person 'for two or more acts or transactions of the same class of crimes or offenses,' and the consolidation of two or more indictments found in such cases. Under the present statute, three separate offenses, committed in the same six months, may be joined, but not more, and, when joined, there is to be a single sentence for all. That is the whole scope and meaning of the provision, and there is nothing whatever in it to indicate an intention to make a single continuous offense, and punishable only as such, out of what, without it, would have been several distinct offenses, each complete in itself."

See, also, Durland v. U. S., 161 U. S. 315, 16 Sup. Ct. 508.

It may be further observed that, if the indictments consolidated for the purpose of trial laid the date of all of the twenty-four offenses as within the same six calendar months, the proof of the offense in the ordinary case need not correspond in day and year with the allegation. Any time within the statute of limitations would be sufficient, and as the statute in its terms, like section 1024, is a mere regulation of procedure, it could hardly be maintained that this rule of the common law is changed or affected by the statute. So, the inquiry whether all the offenses were within the same six months would resolve itself into a question of fact rather than one of law. It was entirely competent, according to the Henry Case, to charge the petitioner with twenty-four separate offenses committed within the same six calendar months in eight separate indictments containing three counts each; and upon conviction the court might pronounce eight sentences, one on each indictment, just as was done in the case at bar, and the judgments would be neither erroneous nor void.

Another and the last objection to be noticed is to the action of the court in the order consolidating the indictments. We think it is clear that this inquiry is addressed to a question of error in the proceeding and judgment, and not to the question whether the judgment and sentence are void, as without jurisdiction and authority. Ex parte Parks, 93 U. S. 18; U. S. v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746; Ornelas v. Ruiz, 161 U. S. 502, 16 Sup. Ct. 689; In re Frederich, 149 U. S. 70, 13 Sup. Ct. 793; Bish. Cr. Proc. § 1410. This question could be re-examined only on writ of error, and in that mode only after exception duly taken and reserved in the court below. Bucklin v. U. S., 159 U. S. 685, 16 Sup. Ct. 182; Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 617.

We conclude, therefore, that there was no error in the judgment of the court below denying the writ, and the same is accordingly affirmed.

NOTE. In addition to the authorities referred to in the opinion, the following may be consulted with advantage, as bearing upon the different points considered and decided: U. S. v. Blaisdell, 3 Ben. 132, Fed. Cas. No. 14,608; Ex parte Peters, 4 Dill. 169, Fed. Cas. No. 11,027; Ex parte Shaffenburg, 4 Dill. 271, Fed. Cas. No. 12,696; Ex parte Peters, 12 Fed. 461; Wiborg v. U. S., 163 U. S. 632, 16 Sup. Ct. 1127.