HALLIGAN, Warden, v. MARCIL.

(Circuit Court of Appeals, Ninth Circuit. October 29, 1913.)

No. 2322.

PARDON (§ 14*) — FORFEITURE — BREACH OF PAROLE — EFFECT — FORFEITURE OF GOOD TIME.

Act Cong. June 25, 1910, c. 387, § 6, 36 Stat. 820 (U. S. Comp. St. Supp. 1911, p. 1703), provides that, at the next meeting of the board of parole held at a prison where a paroled prisoner has been incarcerated after the issuing of a warrant for the retaking of such prisoner for breach of his parole, the prisoner shall be given an opportunity to appear before the board, which may revoke the order and terminate the parole or modify its terms and conditions, and, if the order shall be revoked and the parole terminated, the prisoner shall serve the remainder of the sentence originally imposed, and the time he was out on parole shall not be taken into account to diminish the time for which he was sentenced. *Held* that, since the section declares that a paroled prisoner, on being rearrested for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

breach of his parole, shall serve the remainder of the sentence originally imposed, such prisoner, on being reincarcerated, loses the good time he had earned by good conduct in the prison prior to his parole.

[Ed. Note.—For other cases, see Pardon, Cent. Dig. §§ 28–31; Dec. Dig. § 14.*]

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington.

Petition by James A. Marcil for writ of habeas corpus to obtain his discharge from the custody of O. P. Halligan, Warden of the United States Penitentiary at Bee, McNeil Island, Washington, for the United States Government. From an order sustaining the writ and discharging petitioner, the Warden appeals. Reversed.

For opinion below, see 207 Fed. 809.

C. F. Riddell, U. S. Atty., of Seattle, Wash., and E. B. Brockway, of Tacoma, Wash., and J. J. Sullivan, of Seattle, Wash., Asst. U. S. Attys., for appellant.

James A. Marcil, of Bee, Wash., in pro. per.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. The appellee was petitioner in the court below for a writ of habeas corpus, and, that court having by its judgment discharged him from custody, the government brings the case here by appeal.

The record shows that the appellee was on May 3, 1909, upon conviction of a violation of the National Banking Act, sentenced by the United States District Court for the Eastern District of Washington to serve five years in the United States Penitentiary at McNeil Island, and that his sentence commenced May 13th of that year; that while confined pursuant to the sentence he earned 216 days for good conduct, under and pursuant to the provisions of the Act of Congress of June 21, 1902, entitled "An act to regulate commutation for good conduct for United States prisoners" (32 Stat. L. 397, c. 1140 [U. S. Comp. St. Supp. 1911, p. 1701]); and that subsequently he was paroled under and pursuant to the Act of June 25, 1910, entitled "An act to parole United States prisoners, and for other purposes" (36 Stat. L. 819, c. 387 [U. S. Comp. St. Supp. 1911, p. 1702]), the first section of which provides:

"That every prisoner who has been or may hereafter be convicted of any offense against the United States, and is confined in execution of the judgment of such conviction in any United States penitentiary or prison, for a definite term or terms of over one year, whose record of conduct shows he has observed the rules of such institution, and who has served one-third of the total of the term or terms for which he was sentenced, may be released on parole as hereinafter provided."

The act creates a board of parole, and its third section provides:

"That if it shall appear to said board of parole from a report by the proper officers of such prison or upon application by a prisoner for release on parole, that there is a reasonable probability that such applicant will live and remain at liberty without violating the laws, and if in the opinion of the board such release is not incompatible with the welfare of society, then said board

of parole may in its discretion authorize the release of such applicant on parole, and he shall be allowed to go on parole outside of said prison, and, in the discretion of the board, to return to his home, upon such terms and conditions, including personal reports from such paroled person, as said board of parole shall prescribe, and to remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled, and until the expiration of the term or terms specified in his sentence, less such good time allowance as is or may hereafter be provided for by act of Congress; and the said board shall, in every parole, fix the limits of the residence of the person paroled, which limits may thereafter be changed in the discretion of the board: Provided, that no release on parole shall become operative until the findings of the board of parole under the terms hereof shall have been approved by the Attorney General of the United States."

By section 4 it is provided that if the warden of the prison or penitentiary from which the prisoner is paroled, or the board of parole, or any member thereof, shall receive reliable information that the prisoner has violated his parole, the warden may, at any time within the term of the prisoner's sentence, retake him and return him to the prison. It is then provided by section 6 of the act as follows:

"That at the next meeting of the board of parole held at such prison after the issuing of a warrant for the retaking of any paroled prisoner, said board of parole shall be notified thereof, and if said prisoner shall have been returned to said prison, he shall be given an opportunity to appear before said board of parole, and the said board may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

The record in the case shows that the appellee was out on parole 230 days; that he was then, by reason of his violation of the parole, retaken and returned to the prison. The record further shows that if he continued entitled to 216 days earned by him for good conduct before his parole, as the court below held, his sentence had at the time of the issuance of the writ been completed, and he was legally entitled to a discharge. But if the time so earned by him by his previous good conduct was forfeited by his subsequent misconduct, the judgment of the court below discharging him from custody must be reversed. That is the sole question in the case, and we are of the opinion that it is answered by the provisions of the statutes referred to. Both are acts of clemency intended to invite good behavior, but the consequence of a violation of that clemency is distinctly declared by the statute itself; section 6 of the Act of June 25, 1910, declaring that in the event of a violation of the parole and its revocation therefor, not only shall the time for which the prisoner was sentenced not be diminished by the time he was out on parole, but expressly declares that, in such event, he shall serve the remainder of the sentence *originally imposed*, which was, in the instant case, five years. The formerly acquired credit by reason of the previous good conduct of the prisoner, which could not become effective until the end of his term, was thus forfeited by the statute itself upon the revocation of the parole, because of the prisoner's subsequent misconduct.

The judgment of the District Court is reversed.