## ADERHOLD, Warden, v. PERRY.

### No. 6552.

Circuit Court of Appeals, Fifth Circuit.

June 8, 1932.

HUTCHESON, Circuit Judge, dissenting.

Clint W. Hager, U. S. Atty., and Hal Lindsay, Asst. U. S. Atty., both of Atlanta, Ga., for appellant.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Joe E. Perry was on November 10, 1928, committed to the United States Penitentiary at Atlanta upon two separate sentences, each for a term of eighteen months, but to be served successively. After eighteen months and twenty-one days of confinement and good record in the penitentiary, Perry was released on parole. On December 17, 1930, having broken the conditions of his parole, he was returned to the penitentiary to serve the remainder of the sentence originally imposed without diminution by the time during which he was under parole as provided by 18 USCA § 719. Perry has since served sufficient time to complete the remainder of his original sentence if he is credited with a good time allowance under 18 USCA § 710 upon his first sentence of eighteen months, thereby accelerating the commencement and ending of the second sentence which he was serving when paroled. Perry claimed such allowance, and that further imprisonment is unlawful, and brought habeas corpus. He was ordered discharged, and the warden of the penitentiary appeals.

Perry concedes that his good time allowance was forfeited by breach of his parole so far as his second sentence is concerned, but contends that the allowance earned during his first sentence was a vested right which could not be lost by misconduct pending the second sentence. The warden contends that

as respects good time allowance the prisoner's record of conduct is a single one for his entire service, no matter under how many sentences, and stands or falls accordingly. We think the warden's contention is correct. So far as is here pertinent, 18 USCA § 710 reads thus: "Each prisoner who has been or shall hereafter be convicted of any offense against the laws of the United States, and is confined, in execution of the judgment or sentence * * * whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence to be estimated as follows, commencing on the first day of his arrival at the penitentiary, prison, or jail: * * * upon a sentence of more than one year and less than three years, six days for each month; upon a sentence of not less than three years and less than five years, seven days for each month. * * *. When a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which his deduction shall be estimated."

Soon after the passage of the act, the Attorney General held that the credit for good time was conditioned on the prisoner's having a good record, and that "the 'record of conduct' essential to entitle the prisoner to the credit is not his record for any particular month or year, but for the entire term. The evil arising from any other construction is manifest. If misbehavior defeated only a credit * * * for the time already expired, then one who has been in prison for but a few months would have practically no inducement to conduct himself properly, and the inducement to good conduct would increase as the term neared expiration; but if the credit is made to depend upon good behavior during the entire term the inducement is always the same, and this is unquestionably the effect Congress intended the act to have." 28 Op. Attys. Gen. 109.

This construction of the act by the officer specially charged with its execution has, we understand, never been departed from, nor has it been corrected by Congress. The credit is not a vested right, but only contingent until a time arrives such that its allowance will end imprisonment. The prisoner's record of conduct which is carefully kept under rules of the penitentiary is then to be inspected, and, if found such as the statute prescribes, the prisoner is entitled to the credit and to discharge, and has often been granted it on habeas corpus. If his record is marred by misconduct, the right to a credit is gone. Strictly speaking, the credit is not forfeited; it simply is never finally earned. But, as an inducement to future good conduct or as a mere correction of unjust discipline, the Attorney General on recommendation of the warden may restore lost good time in whole or in part, either immediately after transgression or on review of the prisoner's record as it draws to a close. 18 USCA § 711. When the imprisonment covers several successive sentences, the statute expressly directs that they be aggregated to form a basis for the good time deduction. We think this means that for this purpose the prisoner's service and his record of conduct are to be treated as a continuous whole. The number of days to be allowed as a credit is to be increased as though there were but one single sentence, and the chance of winning or losing the increased credit is to be similarly protracted. The several judicial sentences are not modified by the statute. Each is to be successively served according to its terms. But towards the end of the whole imprisonment the credit based upon its entire length is to be appraised and allowed just as though there had been but one sentence. Misconduct at any time during the imprisonment destroys the right to any credit unless relieved by the Attorney General. Ebeling v. Biddle (C. C. A.) 291 F. 567. That violation of a parole is a misconduct which prevents a good time credit was held in Halligan v. Marcil (C. C. A.) 208 F. 403, and Ex parte Marcil (D. C.) 213 F. 990. We think that Perry has no credit for good conduct which he can claim as a matter of right. Unless the Attorney General shall, under his discretionary power, allow a restoration of good time, the full sentence must be served.

Under the Act approved May 27, 1930, § 8, 46 Stat. 391 (18 USCA § 744h), the Attorney General has established a system of good time allowance in prison camps as a periodic reward for faithful, diligent, and willing service which is not automatically defeated by subsequent misconduct. With this interesting experiment in penology we are not concerned in this case.

The judgment is reversed, with direction to dismiss the writ of habeas corpus.

Reversed.

HUTCHESON, Circuit Judge (dissenting).

I think the District Judge was right in the view he took, that when under the terms of the statute allowing good time the first sentence was fully served, and service of the

second sentence had begun, the first sentence was both in law and in fact served, and the good time earned on it had become irrevocable.

The view which the majority takes not only runs counter to the words of the statute which in the most definite way provide that the allowance is to be deducted from the term of the prisoner's "sentence," but, since the section allowing the aggregate of several sentences to be the basis of the good time applies generally to all sentences which the prisoner is serving, whether imposed by one or several courts, it gives the impossible effect to the statute of coalescing into one sentences which have no legal relation to each other. Besides, it introduces into cumulative sentences an element of uncertainty as to when one ends and the other begins which the law neither intends nor countenances.

That, as to each sentence, the good time becomes fixed upon the expiration of its term, I regard as settled by Howard v. United States (C. C. A.) 75 F. 986, 987, 994, 34 L. R. A. 509, in which the court said, of the contention there made, that a cumulative sentence was uncertain and impossible of execution, since the allowance of good time being optional, the precise time when the first or any subsequent sentence would expire and the sentence next in order would begin, could not be determined: "There is no uncertainty by reason of this in the judgment and sentence. That is for a definite fixed time; and the statute is mandatory, giving the convict a right to the credit for the good time, provided his conduct has been such as to deserve it; and it is made the positive duty of the warden of the penitentiary, if the conduct of the convict has been good, to enter a certificate on the warrant of commitment showing the fact. The time fixed by the sentence of the court remains just as fixed until the time expires, less the deduction for good time, when the fact whether the sentence is to be cut down is determined by inspection of the certificate on the warrant of commitment."

Ebeling v. Biddle (C. C. A.) 291 F. 567, it seems to me, undertakes to write more than it does to construe the statute. By rationalizing on the evils resulting from giving effect to the statute as written, it in effect writes the statute as it thinks it ought to be. The same kind of reasoning is, I think, responsible for the majority opinion. The statute does not aggregate sentences to make one sentence out of two. It does not in terms or by implication declare that the prisoner's several sentences are made one. It in terms treats of the sentences as remaining separate. It speaks of a prisoner's "two or more sentences," of his "several sentences." It nowhere speaks of the sentence as one. It merely extends to the prisoner the grace of a good time allowance rate based upon the time he has actually to serve. It cannot, I think, and stand as written, be read to say that a prisoner who, having two sentences, one beginning only after another has been fully served, has served the first sentence and begun to serve the second, may, through the device of canceling the good time already definitely earned and finally allowed, be made to serve again some part of the sentence already fully served. Howard v. U. S. (C. C. A.) 75 F. 986, 994, 34 L. R. A. 509.

I respectfully dissent.