PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ ENRIQUE PÉREZ, Defendant and Appellant.

No. 4712. Argued January 24, 1934.—Decided December 13, 1934.

*José Tous Soto, Arturo Aponte, J. Valldejuli Rodríguez,* and *Joaquina Pérez Cordero* for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

By means of an indictment, the Grand Jury of the District of San Juan accused José Enrique Pérez of the crime of embezzlement, a felony, committed as follows:

"The aforesaid defendant José Enrique Pérez, in or about December, 1925, in San Juan, which forms part of the judicial district of San Juan, P. R., unlawfully, wilfully, and maliciously and with the intention of defrauding, as he did defraud, The People of Puerto Rico, a political corporation duly created by act of the United States Congress, while filling the position of Receiving Officer of the Bureau of Insular Telegraph, of the aforesaid political corporation, appropriated a check issued by The People of Puerto Rico in favor of Otilia Rivera, for the sum of six dollars and twenty-one cents ($6.21), which had been intrusted to the defendant José Enrique Pérez, and received by him, in the course of his duties as such Receiving Officer of the Bureau of Insular Telegraph of The People of Puerto Rico, converting the said check to his own use, and for purposes foreign to the lawful discharge of his duties, defrauding in this manner the aforesaid People of Puerto Rico in the already indicated sum of six dollars and twenty-one cents ($6.21), the said check also being, then and there, public funds belonging to, and the property of, The People of Puerto Rico."

On December 13, 1930, the indictment was read to the defendant and the latter formulated the following allegations:

That he had been acquitted of the same crime and for the same transaction on November 9, 1929. Case No. 1058.

That he had been acquitted of the same crime and for the same transaction on December 15, 1928. Case No. 869.

That he had been once placed in jeopardy for the same offense and for the same transaction in case No. 1057 wherein the jury summoned to try him was unduly discharged.

The prosecuting attorney then said: "We deny that the defendant was acquitted of the same facts and we likewise deny that he was placed in jeopardy for the same offense. We further set up as a special plea with regard to the verdicts of acquittal that the same were fraudulently obtained." The defense objected to the last statement of the prosecuting attorney. The latter replied and the court decided as follows:

"The plea of former jeopardy is both one of law and of fact. It is a question to be determined by the jury. Let the defendant explain the same at the time of the trial, and let the jury determine it. Now, after this objection and that defense to the indictment, it is proper for the defendant to answer the same."

"For the sake of the record," answered the defense, "we take an exception. We plead 'not guilty' and move for a jury trial."

On January 14, 1931, the case was called for trial. When the impaneling of the jurors was proceeded with, the clerk informed that there were not sufficient jurors because five had been excused and twelve were deliberating in a case which had been submitted to them. The court ordered the discharge of the panels which had been summoned, the citation of a regular panel of twenty-four and of a special one of ten to appear at 2 P. M., and it was done so.

At 2 P. M. seventeen jurors answered to the call. The attorney for the defendant, Mr. Tous Soto, moved for a continuance of the trial until the next day on account of his being ill, which the court granted.

On January 15, 1931, the summoned panels were exhausted by reason of the challenges of both parties, the citation of another special panel of twelve was ordered, and the twelve jurors who were to act in the trial were finally selected in the afternoon.

The defendant took a general challenge to the panel, which was overruled; the jurors were sworn and, as it was half past five in the afternoon, the trial was postponed until the 16th, continuing on the 17th, 21st, 22nd, 23d, 24th, 26th, 27th, 28th, and 29th of January, when it ended with the following verdict:

"We the members of the jury find the defendant José Enrique Pérez guilty of embezzlement (felony). (Sgd.) Eugenio Astol, president of the jury."

On February 12, 1931, the defendant moved for a new trial, which was denied by an order of December 7, and on the 14th of the same month the court rendered its judgment sentencing him to serve four years in prison at hard labor. The defendant took this appeal therefrom.

An assignment of twenty-one errors, which are fully discussed in the brief, is made therein. Some of them are discussed anew in the additional brief filed on January 8, 1934, which was answered by the prosecuting attorney on the 24th of the same month.

The first two errors assigned deal with the impaneling of the jury. No great importance is given to them in the brief and, in fact, they are not important.

Due to the creation of the District Court of Bayamón, the list of jurors of the District Court of San Juan was changed. A new commissioner was appointed, the jurors from the towns forming the new district were stricken out, and other jurors of the same district of San Juan were designated to substitute them.

The action of the court to that effect was correct. What a defendant is entitled to is to be tried by a jury of his own district, selected in the manner prescribed by the law. Districts are subject to be changed by the Legislature, the district of a defendant being that which the law fixes. Upon the promulgation of the statute creating the District Court of Bayamón with municipalities which formerly belonged to

the district of San Juan, said municipalities ceased to form part of the district of San Juan, and hence, the defendant was not entitled to be tried by jurors from those municipalities. His district was that of San Juan, formed by the municipalities which the Legislature finally assigned to it after the segregation. *People* v. *Capre,* 44 P.R.R. 108.

■ With regard to the selection of the twelve jurors who acted in the case and rendered the verdict, the court could have availed, without doubt, of the jurors who had been already cited for other cases. It did not do so. It ordered the summoning of a new regular panel and·of two special ones which became necessary by virtue of the great number of challenges. Under the attendant circumstances, we do not think that the court so departed from the procedure prescribed in the law nor that it exercised its discretion in such a manner as to justify the conclusion that it violated any fundamental right of the defendant. No prejudice was shown.

In *People* v. *Juliá,* 25 P.R.R. 238, this Court said:

"The cases of *People* v. *Acosta,* 11 P.R.R. 240, *People* v. *Morales,* 14 P.R.R. 227, *People* v. *Vázquez,* 20 P.R.R. 338, *People* v. *Pillot,* 20 P.R.R. 353, show that the court has a wide discretion in this matter of drawing a jury and we find no abuse or prejudice to the appellant. The manner of selection was at best a mere irregularity as indicated in the above cases. Similar pronouncements are found in *State* v. *Medley* 66 S. E. 358, *State* v. *Watson* 10 S. E. 705, *People* v. *Sowell,* 145 Cal. 292, *State* v. *Straub,* 47 Pac. 227, *People* v. *Richards,* 82 Pac. 691, *State* v. *Croney,* 71 Pac. 783, to the effect that a greater number of jurors cannot prejudice defendant and that similar statutes are merely directory and that the court will not reverse in the absence of a showing of prejudice."

■■ It is maintained by the third assignment that the court erred in admitting the testimony of Enrique Palacios to show the public charges against the defendant and in admitting the latter's appointment as Disbursing Officer, not-

withstanding that the approval thereof by the Governor was not accredited.

The evidence objected to consisted in the testimony of Enrique Palacios, Assistant Superintendent of the Bureau of Insular Telegraph, who said:

" . . . that he knows José E. Pérez, the defendant, who was an employee of said Bureau during the years 1920 to 1927; that in 1925 the defendant was an employee of said Bureau; that the appointment of Pérez was that of 'clerk and accountant' of said Bureau; that he did not see the appointment of Pérez; that he believes he saw copy thereof in a file; that Pérez was the Receiving Officer; that all the mail, including the remittances of funds from the telegraph operators of the Island, was addressed to the Superintendent of the Telegraph; that Manuel Rodríguez filled that position in 1925 and still does; that the witness opened the mail and ordered the distribution thereof to the different employees; that he did not see the delivery made; that this was done by the messengers; that he ordered the remitttances from the Island to be delivered to the defendant Pérez. The witness Enrique Palacios further stated that the defendant José Enrique Pérez was Receiving Officer, Clerk and Accountant, and Special Disbursing Officer of the Bureau of Insular Telegraph of The People of Puerto Rico, and filled that position from the year 1920 to 1927, and hence he filled the same in the months of November and December of 1925, it being incumbent on him as such public officer of The People of Puerto Rico, among other things, to receive all the moneys sent by the different telegraph operators from the different offices of the Insular Telegraph of the People of Puerto Rico as remittances coming from telegrams and telegraphic money orders; that although such remittances were addressed to the Superintendent of the Insular Telegraph, the truth was that the witness was the person who opened them and also that they were delivered to the defendant José Enrique Pérez because it was his duty to receive them; that it was incumbent on the defendant José Enrique Pérez, once he received the remittances coming from telegrams, to depos't the same in the American Colonial Bank of San Juan, P. R., in favor of The People of Puerto Rico, in the official account of the Treasurer of Puerto Rico, that it was incumbent on the defendant José Enrique Pérez to deposit the remittances coming from telegraphic money orders, once the same were received, in the official account which the defendant José Enrique Pérez kept, also in the

American Colonial Bank, as Special Disbursing Officer of the Bureau of Insular Telegraph of The People of Puerto Rico. The witness further stated that by no means could the defendant depos‘t any of said funds in any particular or personal account of his own.''

The evidence also consisted in a certificate issued by the Auditor of Puerto Rico, which literally copied, is as follows:

''Mr. José E. Pérez, Bureau of Insular Telegraph, Department of the Interior, San Juan, P. R.—Sir: In accordance with 'An Act to provide for the audit of claims against the Government and The People of Porto Rico before payment therefor and for other purposes,' approved March 14, 1907, I have the honor to appoint you subject to the approval of the Governor, Special Disbursing Officer, for the purpose of handling all moneys in connection with the new telegraphic money orders system, recently established at the Bureau of Insular Telegraph. When this appointment is approved by the Governor and a bond of $5,000 in favor of The People of Porto Rico is approved by the Auditor and filed with the Treasurer you will make requisitions for such amount of money as may be necessary, chargeable to the corresponding appropriation, but at no time to exceed the amount of your bond.

''The funds in your hands may be replen‘shed from time to time, as is necessary, by stating a disbursement voucher in your favor supporting same by vouchers and pay rolls, as the case may be, from which payments have been made, properly certified by the proper official.

''You are personally held responsible under your bond, for all funds advanced to you as Special Disburs‘ng Officer, and should you resign or for any reason be separated from your office, you must not return over your funds to your successor but repay all money advanced to you to the Treasurer of Porto Rico to the credit of the appropriation from which advanced.

''Th‘s is very important and for your own protection must be rigidly complied with.

''Respectfully,
''By direction of the Auditor,
''A. G. Bishop,
''Acting Assistant Auditor of P. R.''

There was no error in our opinion. It is admitted that the defendant filled the official position of Accountant, Clerk

and Translator of the Bureau of Insular Telegraph, and the evidence introduced tends to show that in addition he filled that of Disbursing Officer in the same Bureau, appointed as the certificate indicates and acting *de facto* as the testimony expresses.

The objection is made that it was not shown that the appointment had been approved by the Governor, and the truth is that no evidence whatsoever of the approval was presented. But for the sake of prosecuting the defendant for the appropriation of the funds he received in his capacity as Special Disbursing Officer, no such showing was necessary, it being sufficient to prove that he was appointed and acted as such, and that as such he received the funds he appropriated.

In *People* v. *Cobler,* 108 Cal. 538, the Supreme Court of that State said:

"It is contended that the verdict was not justified by the evidence: 1. Because there was no sufficient showing that Gray was the county assessor, or that defendant was his deputy.

. . . . . . . . . .

"Under the first of these objections it is urged that the statute required an assessor to file an oath of office and a bond for the faithful discharge of his duties, and that the record entirely fails to show that Mr. Gray ever filed such oath or bond, or was an assessor of the county of Los Angeles, or had authority to appoint a deputy. And it is said: 'In order to show the relation existing between the defendant and the county, it became necessary to prove that he was act'ng by and through the authority of a *legal appointment* made as required by law, by an *officer authorized to make appointment.* And in cases of embezzlement this relation of trust must be clearly shown to exist or no conviction can be had.' It is further urged that, while it appears from the record that some papers were introduced in evidence showing the appointment of defendant to the office of deputy assessor, still it was not shown that he filed any oath of office or bond as required of a deputy.

"The judgment cannot, in our opinion, be reversed on this ground. It was clearly shown that Mr. Gray was acting as assessor of the county of Los Angeles during the year 1893, and the defendant was acting as his deputy. The law presumes 'that a person acting in a

public office was regularly appointed to it,' and 'that official duty has been regularly performed.' If, therefore, the defendant, while acting as deputy assessor, received as such officer moneys belonging to the county, and fraudulently appropriated them to his own use, he was guilty of embezzlement.''

The case of *People* v. *Aparicio,* 42 P.R.R. 2, which the appellant invokes in his favor, is different. Aparicio was therein indicted as municipal auditor, an office which does not involve the custody of public funds, while Pérez is herein indicted as Receiving Officer of the Bureau of Insular Telegraph, a position which involves the custody of public funds.

■■ The fourth and fifth errors are assigned as follows: ''The court erred in holding that the indictment charged José E. Pérez, the defendant, with the crime of embezzlement,'' and ''The court erred in dismissing the defendant's motion for nonsuit.''

The prosecutor merely attacks the fourth. He maintains that the fifth does not exist, inasmuch as the motion for nonsuit should be regarded as abandoned upon the introduction of evidence by the defendant.

We know the indictment. The law applicable is Section 446 of the Penal Code, which reads:

''Every officer of Porto Rico, or of any municipality, city, or other civil division, and every deputy clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant, attorney or agent of any association, society, or corporation (public or private) who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or hides it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement.''

The decisions on the subject are very abundant. Some of them, summarized by Corpus Juris, are to the effect that:

''In an indictment or information against a public officer or employee for embezzlement it is sufficient to follow the estatute and allege the acts and facts therein declared to constitute the crime. The

official character of defendant should be set forth, unless the prosecution is under a statute embracing every person embezzling public funds; but it is not necessary to state the time and manner of his appointment. In addition to the allegation as to defendant's official character, the indictment or information must aver that the money or other property embezzled was received or held by him by virtue of his office or employment; but it has been held that the purpose for which the money was intrusted to defendant need not be set out." 20 C. J. 476.

And here the indictment follows the statute. It is therein averred that in December, 1925, and in San Juan, the defendant was a Receiving Officer of the Bureau of Insular Telegraph, that is, an officer of Puerto Rico; that in the discharge of his duties, and with the intention of defrauding The People of Puerto Rico, he appropriated a certain check received in the course of his employment and intrusted to his custody, converting the same to his own use and defrauding in that manner The People in $6.21, the said check being, then and there, public funds belonging to, and the property of, The People of Puerto Rico. In our opinion, it is sufficient.

It is contended, however, that it does not appear from the indictment that the check involved belonged to The People of Puerto Rico, nor that its value is averred, nor that it constitutes public funds.

The fact that the check was issued in favor of Otilia Rivera does not mean that it continued to be her property, after it was averred in the indictment that the same was delivered to the defendant in the course of his official duties and after it was expressly stated therein that at the time the defendant appropriated the said check, the same constituted public funds under his custody, belonging to The People.

The value of the thing appropriated was expressly averred where that of the check is named and where it is maintained that by virtue of the appropriation The People was defrauded in that amount, repeating the same.

And as to whether the check was a public fund, the indictment so asserts and the assertion finds support in the law and the jurisprudence.

The law defines the crime of embezzlement in general as the fraudulent appropriation of property by a person to whom it was intrusted.

Section 446 of the Penal Code which we have hereinbefore transcribed and which refers to public officers, speaks of "wealth" (*caudales*) in the Spanish edition and of "property" in the English one.

And Section 445 prescribes:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted."

In order that the crime may constitute a felony, it is necessary, therefore, that irrespective of the value of the property embezzled, "the embezzlement or defalcation be of public funds . . ." according to the original English version.

A check, as defined by the Code of Commerce, is an instrument by virtue of which the maker withdraws the whole or part of the funds he may have at his disposal in the hands of the drawee.

According to the Negotiable Instruments Act, a check is one of such instruments and is defined as a bill of exchange drawn on a bank payable on demand. Code of Commerce, 1932 edition, p. 165.

And Corpus Juris says that it is:

"A written order directing a bank or broker to pay money as stated therein."

That a check may be considered as a fund has been expressly decided in *United States* v. *Greve,* 65 Fed. 488, 490,

" 'Funds' includes moneys, and much more, such as notes, bills, checks, drafts, stocks, and bonds."

Also in *Montgomery County* v. *Cochran et al.,* 121 Fed. 17, 21, as follows:

"The use of checks, certificates of deposit, and other commercial instruments is so universal and, so essential in large transactions that we cannot assume that the Leg'slature of Alabama meant to forbid their use in the negotiation and sale of the bonds. If Josiah Morris & Co. had had the coin on hand to pay for the bonds in question, the transaction would have been conducted by the use of checks or certificates of deposit, and we think without any violation of the terms of the statute. If silver coin had been in bank as the basis of the transaction, its weight (about 6,546 pounds) would have made the use of checks or certificates necessary to conveniently complete the transaction. We think, therefore, that checks or certificates of deposit received in good faith by the board of revenue, and delivered to the treasurer, or delivered by direction of the board of revenue to the treasurer, would be 'funds or money' of the 'proceeds of sale' of the bonds in the hands of the treasurer. The check for the price of the bonds in the hands of the treasurer, he having receipted for the same as money, was 'funds or money' in his hands, within the meaning of the statute. It was not his duty to keep the check, but to have it cashed, and to keep the coin or notes received on the check. In doing th's, he should conform to the law of the state, and keep the coin or notes under his actual personal control, as, for example, in his own safe, or on special deposit. It is conceded to be the settled law in Alabama that, if the check was money in the treasurer's hands, it was a convers:on of it to make a general deposit of it in a bank. *Alston* v. *State,* 92 Ala. 124, 9 South. 732, 13 L.R.A. 659. If there was reluctance in applying this rule generally to a deposit in a solvent bank it should be applied without question under the circumstances under which the treasurer deposited these funds. If the check was funds or money, within the meaning of the statute, that would seem conclusive. But, if it was necessary that the check be collected before it became money, it is urged with great force that the effect of the deposit of the check to the credit of the treasurer was to collect the check. When the check was presented at the bank and accepted by crediting the amount of it to the treasurer, the effect in law of the transaction was the same as if the amount of the check had been handed to the treasurer and by him returned to the bank."

And as the check was a fund, it is clear that if it formed part of the wealth (*caudal*) of The People of Puerto Rico as being received for it by one of its officers in the course of his official duties, the same had the character of a public

fund required by law. In *People* v. *Hamilton*, 32 Pac. 526, it was held that

"the allegation that.these moneys were received by the defendant 'in his official capacity' is the allegation of a fact which conclusively fixes their character as 'public moneys.'"

In discussing this error in his additional brief, the appellant further contends that the prescription of the action exercised by The People appears from the face of the indictment itself. He invokes Sections 77 and 78 of the Penal Code, which, quoted from the English original, provide as follows:

"Section 77.—There is no limitation of time within which a prosecution for murder, the embezzlement of public moneys, and the falsification of public records must be commenced.

"Sect:on 78.—The prosecution for any felony other than murder, the embezzlement of public money, or the falsification of public records, must be commenced within three years after its commisison."

He concludes that, since the appropriated thing in his case cannot be considered by any means as "public money," the action should have been commenced within three years after the commission of the offense, and inasmuch as it was commenced later, there is only one solution: to file away the prosecution.

He invokes the same case of *United States* v. *Greve*, 65 Fed. 490, which we have hereinbefore cited, wherein it was said in the course of the opinion: "The charge is the embezzlement of moneys and funds. The words 'moneys and funds' are not of identical meaning."

We have examined the whole of the opinion, and we think that instead of being favorable to the appellant's contention, it is adverse to it. What was therein finally decided was that in view of the manner in which the indictment was drafted, the same was too vague and indefinite, the defendant not having been informed in the manner he was entitled to be, with respect to what was the criminal act he was charged

738

with. The court itself said: "The word 'funds' is not used in the alternative as a synonym for 'money'. It is used in the conjunctive. Its function is, as no doubt the purpose of its use was, to add something to the term 'moneys'."

And inasmuch as in repeated cases it has been held that the phrases "public funds" and "public moneys" are of the same meaning, and they have been interchangeably used in the laws and the jurisprudence to express the same thought, we must decide that the appellant is not right, either. See *City of Sacramento* v. *Simmons*, 225 P. 36; *Aetna Casualty & Surety Co.* v. *Bramwell*, 12 Fed. (2d) 307; and *Bank of Blytheville* v. *State*, 230 S.W. 550.

 The sixth error is the one which the appellant argues in the first place and with more persistence. It is formulated as follows:

"The court erred in not admitting the defendant's evidence to support his allegation of former judgments of acquittals of the same offense, in excluding sa'd evidence from the consideration of the jury, and in deciding as a question of law, without submitting the same to the consideration of the jury, that there was no ident'ty between the offenses of which he was acquitted and that which is the object of the indictment in the instant case."

To support his allegations of having been twice acquitted of the same offense, the appellant presented the following: the indictment in action No. 869 wherein he was charged with an offense of Embezzlement (felony) for having fraudulently appropriated while an employee of the Insular Telegraph, during the period of time comprised between March, 1926, and January, 1927, funds of The People of Puerto Rico intrusted to his custody, amounting to $3,399.55, the verdict of not guilty, and the judgment of acquittal; the indictment in action No. 1058 charging him with Embezzlement consisting in having fraudulently appropriated, in June, 1927, $330 of The People of Puerto Rico which he had under his custody, and which he had received in the course of his official duties as an employee of the Insular Telegraph, the verdict

of not guilty, and the judgment of acquittal; the indictment in action No. 1057, from which it appears that he was charged with an offense of Embezzlement (felony) consisting in having fraudulently appropriated in March, 1927, $300 of The People of Puerto Rico which he had received and held under his custody as an employee of the Insular Telegraph, and the documents relating to the incident of the discharge of the jury drawn to try him. He offered in evidence the testimony of the expert accountant Silvino Díaz to connect the indicated actions with this one and to show that the three of them were stages of the same criminal transaction. He also offered in evidence a copy of a complaint filed in the District Court of San Juan, in an action of·debt, by the People of Puerto Rico against José E. Pérez, wherein it is alleged that the defendant, an employee of the Insular Telegraph, received $19,866.90 in the course of his employment from 1923 to 1927 and he fraudulently appropriated the same to the prejudice of the plaintiff.

The testimony of the accountant is very extensive, and we shall have to refer to it so as to analyze other errors assigned. For the sake of the study and determination of this one, it will suffice to transcribe the following:

"Defense.—Q. What I want to know is whether the expert was able to check in his investigation, the plan, method, form, and manner in which the appropriations were carried out, in his opinion, during each one of the months from March, 1926, to January, 1927, and whether that plan was the same in each one of said appropriations.

"A. I found out that during the eleven months of the indictment, he forged the accounts from San Juan to the Auditor for a smaller amount than what he had received from the local telegraph operator. In each one of the months he reported to San Juan as received, an amount smaller than what he had really received; at the same time he forged the accounts of the telegraph operator as to the bus'ness done.. I found out that in each one of the eleven months of the indictment the defendant reported to the Auditor in his general report of all the towns as if he had received a smaller amount from San Juan than what I confirmed he had received from the telegraph

operator, and I likewise found out that the account of San Juan exceeded what the telegraph operator had reported to the Auditor as the business done in San Juan, so that the account would balance in that manner. That was done in the eleven months of the indictment.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Judge.—Q. Then, how did he replenish the amount he failed to report?

"A. For example, in San Juan, he received $500 in a check, and received from Ponce, let us say, $500 in different checks so that he had received $1,000 from the two stations; then he reported to the Auditor that he had received $500 from Ponce, which was really the amount received, but reported that he had received $200 from San Juan; then he reported to the Auditor that he had received $700 from the two stations, but inasmuch as the check of San Juan was drawn in favor of the Bureau of Insular Telegraph and he could not collect it, he deposited the same in full; but from Ponce, whence he received checks he could collect, he only deposited $200 and thus he had $700 deposited which was the same amount which he had reported to the Auditor as received from San Juan and Ponce, and so he could keep the $300 from Ponce, and the station making an incomplete report was San Juan. That was the plan he followed.

"Defense.—Q. From 1923 to 1927?

"A. Yes, sir."

During the course of the testimony of the accountant, the prosecuting attorney made the following admissions:

"Defense. The prosecuting attorney accepts that under the indictment of the Grand Jury of March 28, 1928, formulated against the defendant José Enrique Pérez, because of the appropriation of funds of the Insular Telegraph in an amount of $3,399.55, in his character of Receiving Officer of the Insular Telegraph, during the period of time comprised from March, 1926, to January, 1927, evidence was presented to the jury taking cognizance of the case, of eleven different appropriations, in each one of said months, over the objection of the defense, which moved the court to compel the prosecuting attorney to choose one among the different appropriations as to which evidence was offered, a motion which was denied by the court.'

"Prosecuting attorney. I accept that, with one exception: 'that the check for $6.21 was not among them, nor was evidence presented regarding that defalcation."

After making reference to the evidence, and invoking the decisions he deemed pertinent, the appellant exposes his theory in his brief as follows:

"Now then, the testimony of the expert accountant Silvino Díaz, the admissions of the prosecuting attorney at the time of the trial, and the admission of The People of Puerto Rico through its Attorney General in the civil action against the defendant, identify the four indictments, the present one, the two former ones of which the defendant was acquitted, and the other former one in which he was placed in jeopardy, as stages of only one criminal transaction, as the links of a chain which culminated in the appropriation of the sum of $19,866.90.

"This is the offense, the violation by the defendant of his trust, of the confident deposited in him, appropriating the sum referred to. The process, the plan followed for the perpetration of the crime was the one described by the accountant, successive retentions or distractions of funds during a long period, 'small peculations' as designated by the jurisprudence. Each one of these infinite peculation is not independently a separate crime; all of them form a series emanating from the same criminal intent, put into practice in obeyance to only one impulse.

"The unity of act and intent which must exist (Sec. eleven, Penal Code) would be divided if the integrity of the criminal act 'appropriation by the officer of the funds intrusted to his custody' were to be divided in as many criminal acts as months, days, were employed in the execution of the purpose; as different checks were appropriated on each day, as dollars and cents were drawn by said checks.

"There is no rational basis whatsoever for the division in parts of the criminal prosecution which culminated in the appropriation of the sum of $19,866.90. It is as arbitrary to divide it in periods of several months, as was done in the first indictment of which the appellant was acquitted (March, 1926, to January, 1927, both inclusive, eleven months, $3,399.55), as to divide it in periods of a month (June, 1927, in the second indictment for $3,330—March, 1927, in the third one), or in as many acts as checks or negotiable instruments were appropriated. In any case it would make a division of the entity, of the criminal act, of the series of the transaction. There would be the 'splitting' repugnant to the universal jurisprudence, because it puts in the hands of the State the power to vex and appress the defendant,

because it makes the sovereign power a persecutor and not a prosecutor of punishable acts."

After a thorough study of the facts and the law, we are convinced that the court acted correctly in holding that the defendant was not acquitted nor was placed in jeopardy for the same offense in actions Nos. 869, 1058, and 1057.

Embezzlement is not a continuing offense by its own nature. Each peculation or misappropriation constitutes a complete and distinct offense. It was so held in *Storm* v. *Territory*, 94 Pac. 1099, wherein it was said:

"Embezzlement si not a continuing offense, but is one in which each misappropriation is a distinct offense."

What happens is that as the legislators and the courts have to cope with an offense which is generally committed by experts in accounting who make it very difficult to fix the exact date of each one of the appropriations making up the final defalcation which is discovered, the indictment for a series of appropriations has been permitted as if all of them constituted only one offense. It is clear that when this happens, other prosecutions cannot be had later for each one of the appropriations comprised in the series, if the defendant is acquitted, but here, the appropriation imputed in the indictment occurred in December, 1925, and consequently, it was not comprised in the ones charged in cause No. 869, which occurred between March, 1926, and January, 1927, nor in those charged in cause No. 1058, which took place in June, 1927, nor in those charged in cause No. 1057 which were carried out in March, 1927. The fact that the same method was followed in all of them does not matter.

In *State* v. *Moland*, 19 S. W. 715, it was held:

"Embezzlement is necessarily peculiar in some of its features, and part'cularly so when a public officer obtains funds by virtue of his office. Unlike the ordinary clerk, he has no one to watch over his manner of doing business. Manifestly, if the rigid rules of the common law, requiring the state to show exactly when he received

certain moneys, the character of the money, whether drafts, bank notes, or coin, and their denominations, and exactly how he effected the misappropriation, were to obtain, then the statute would be a dead letter. Accordingly the courts of this country, with great unanimity, have not considered the common-law precedents as controlling under similar statutes, and while requiring a substantial compliance with the statutory requirements, and having due regard to the constitutional guaranties, they have construed this law liberally. The fiduciary relation enables the officer to convert funds and securities to his own use, and at the same time renders it almost impossible for the state, in advance, to charge when and how it was done. Embezzlement often consists of a series of acts, done at different times, but with a common design; and ultimately the one fact appears that there is a shortage. All that can be said is that there is a certain deficit; the public funds have been embezzled to a certain amount. To require the state to select some one fact, and elect to make a case on that alone, would often result disastrously, and crime go unpunished. Consequently, when the defendant is appraised of the charge of the deficit, of the amount claimed, of the official character in which he received it, and his conversion thereof, he has notice of the nature and cause of the accusation.''

And in *State* v. *Davis*, 92 Atl. 821, the Supreme Court of Rhode Island makes an extensive study on the subject, from which we transcribe the following:

'' . . . . . Assuming for the occasion that there is a form of embezzlement entitled to be characterized as a continuing offense, the form of the indictment may include that, but does not exclude other forms of the offense. It cannot be said, therefore, that such an indictment simply contemplates and refers to a continuing offense, and, this being so, the second question is answered in the negative.

''In all of these ten cases in response to motions of the defendant bills of particulars have been filed. They are the same in each case. The third question includes, in substance, as part thereof, item 'first' of the bill of particulars. The purport of this question is: Do these indictments, alleging in general terms an embezzlement of money by the principal and showing by the bills of particulars an intent to prove embezzlement by him from time to time during the period covered by the indictment, charge a continuing offense subject to one prosecution only and one penalty up to the time of the bringing of the indictment?

"This question requires some consideration of the character of the crime of embezzlement, and as to what effect, if any, Section 18 has thereon, particularly as to its becoming in consequence a continuous offense. The general rule is well established that in a continuous offense there can be but a single prosecution. One prosecution in such a case for a section or a part of the things taken absorbs the offense. The transaction cannot be split up into a series of cases. Wharton's Crim. Law, vol. 1, sections 27, 931; *State* v. *Martin*, 23 R. I. 143, 146, 49 Atl. 497; *In re Snow*, 120 U. S. 274, 7 Sup. Ct. 556, 30 L. Ed. 658. In the case last cited the offense of cohabiting with more than one woman was charged. On page 281 of 120 U. S., on page 559 of 7 Sup. Ct., 30 L. Ed. 658, the court says:

" 'The offense of cohabitation, in the sense of this statute, is committed if there is a living or dwelling together as husband and wife. It is, inherently, a continuous offense, having duration, and not an offense consisting of an isolated act.''

"This citation points out the ordinary and essential characteristic of a continuous offense.

"This question as to 'continuing offenses' becomes important, because there are ten indictments here covering successive periods of six months—in all five years. The crime of embezzlement resembles in many particulars the common-law crime of larceny. In this country it is generally held that the taking as a single act at the same time and place of one or several articles constitutes a distinct offense of larceny. The law of embezzlement in this respect is the same as to larceny.

* * * * * * *

"In view of the purpose of such statutes, we think that the words 'evidence may be given of any such embezzlement committed within six months' should be construed as permitting the proof of different takings within such period as constituting one offense for the purpose of permitting a conviction based on the aggregate amount thus taken, and that such construction is supported by the greater weight of authority. But in adopting this view we do not regard such an offense as a continuous one. As stated, Section 18 is simply a modification of procedure in order to make more certain the conviction of embezzlers. If, under such an indictment and a bill of particulars charging an intention to prove two or more takings, a continuing or continuous offense is charged, then, as has already been shown, the result would be that in the case of an offender whose peculations extend over several years the state would, by virtue of this very

statute, be prevented from prosecuting him other than for embezzlements committed within some particular six months selected from the entire period. Th's would defeat, rather than carry out, the purpose of such statutes. This very limitation as to the giving of evidence for a period of six months seems to negative the claim of a continuous crime. If it, in fact, be continuous, why should not the state be permitted to show, so far as the statute of limitations may permit, the entire peculations of the offender? The assumption that the state has tied its own hands in endeavoring to provide greater freedom of action is not necessary. We think the difference between crimes inherently continuous and crimes essentially distinct and individual in character, but which are with'n certan limitation permitted to be consolidated and treated as one, is clearly set forth in *In Re Henry,* 123 U. S. 372. This case arose under Section 5480 of the Revised Statutes of the United States, which is for the prevent'on of the fraudulent use of the mails. It provides, among other things, that:

" 'The indictment, information, or complaint may severally charge offenses to the number of three when committed' within the same six calendar months; but the court thereupon shall give a single sentence.'

"There had been two indictments and convictions thereunder for acts of misuse committed within the same six months. The court says:

" 'We . . . are unable to agree that there can be but one punishment for all the offenses committed by a person under the statute within any one period of six calendar months.

" 'Each letter so taken out or put in constitutes a separate and distinct violation of the act. It is not, as in the case of *In re Snow,* 120 U. S. 274 (7 Sup. Ct. 556, 30 L. Ed. 658), a continuous offense, but it consists of an isolated act, and is repeated as often as the act is repeated. It is indeed provided that three distinct offenses, committed w'thin the same six months, may be joined in the same indictment; but this is no more than allowing the joinder of three offenses for the purpose of a trial. That is the whole scope and meaning of the provision, and there is nothing whatever in it to indicate an intention to make a continuous offense, and punishable only as such, out of what without it would be several distinct offenses, each complete in itself.'

"In *Howard* v. *United States,* 75 Fed. 986, 21 C.C.A. 586, 34 L.R.A. 509, the defendant was convicted under eight indictments for violating said Section 5480, and was sentenced on each indict-

ment. We think the present cases are clearly distinguishable from the maintenance of a common nuisance, practicing dentistry, or being a common gambler. In such cases continuity is the gist of the offense. *State* v. *Smith*, 35 R. I. 285, 288, 86 Atl. 887; *State* v. *Martin*, 23 R. I. 143, 146, 49 Atl. 497; *State* v. *Groves*, 21 R. I. 252, 43 Atl. 181; *State* v. *Melville*, 11 R. I. 417. Even in offenses of this kind, indictments covering definite successive periods named have been declared to be permissible. *Com.* v. *Connors*, 116 Mass. 35. See, also, *State* v. *Martin, supra; State* v. *Melville, supra; People* v. *Gault*, 104 Mich. 575, 62 N. W. 724, which was a case of keeping liquor for sale illegally.

"*Secor* v. *State, supra,* and *People* v. *McKinney, supra,* are both embezzlement cases. They are in point here, being indictments under statutes like our own, both as to the fact that the crime is not a continuous one, and also as to bringing separate indictments. In *Secor* v. *State* there was a single indictment with two counts, wh'ch were identical, except as to the amounts taken and to the dates, which were six months apart. Separate verdicts on each count were upheld. In *People* v. *McKinney* there was one indictment containing eight counts, each for the embezzlement of $4,000 on different dates, all included within a period of six months. On page 95 of 10 Mich., the court says:

" 'Where the several offenses charged, though distinct in point of law, yet spring out of substantially the same transaction, or are so connected in their facts as to make substantially parts of the same transaction, or connected series of facts, the defendant cannot be prejudiced in h's defense by the joinder, and the court will neither quash nor compel an election.'

"If the several counts can be joined in the same indictment, and a separate verdict brought in on each count, there can be no reason why separate indictments, instead of separate counts, are. not perm'ssible. See *Howard* v. *United States, supra,* 75 Fed. 990, 21 C.C.A. 586, 34 L.R.A. 509; Bishop, New Criminal Procedure, vol. 1, Sections 421, 422. In some of the cases cited by the defendant expressions are used in reference to the crime of embezzlement which indicate a conception of continuity as a characteristic of crime. In *State* v. *Reinhart*, 26 Or. 466, 481, 38 Pac. 822, and *State* v. *Dix*, 33 Wash. 405, 411, 74 Pac. 570, the very expression 'continuing offense' is used. In *Brown* v. *State*, 8 Ohio St. 496, 513, 'a continuous series of conversions' is used, and in Underhill on Criminal Evidence, Section 289, the words are 'a continuous series of acts or conversions.' The fault in these expressions, as it seems to us, lies in carrying the

idea of cont'nuity characteristic of the continuous service or employment of the servant or agent over into his separate and distinct acts of embezzlement committed at different times within the period of such service or employment.''

Under the attendant circumstances of the case, the court was entitled to determine by itself the question raised, without submitting the same to the jury.

For the purposes of a former jeopardy or a former acquittal, the identity of the indictments may involve a question of fact which should be submitted to the jury, or simply one of law which may be decided by the court.

It it would have been here alleged that the appropriated sum was comprised in the sums appropriated in cases Nos. 869, 1058, and 1057, and evidence would have been introduced as to that fact, the decision would have been incumbent on the jury, but it is here accepted that as a matter of fact it was not comprised, except only if embezzlement were to be regarded as a continuing offense, and only one transaction were involved, which lasted from 1923 to 1927. And this was a question of law, the determination of which was exclusively incumbent on the court.

 The seventh and eighth errors are formulated as follows:

''7. The court erred in admitting the evidence of the prosecuting attorney relating to former offenses committed by the defendant, and in rejecting the evidence of the defendant tending to prove the noncommission thereof.

''8. The court erred in failing to charge the jury, upon receiving the evidence of supposed former offenses, that the only effect thereof was to show that the supposed act of appropriating a check, charged in the indictment of the present case, had been committed with criminal intent.''

For the purpose of showing the defendant's guilty knowledge, the prosecuting attorney produced other checks in evidence which had been appropriated by the former in the same manner as the one on which the indictment is based,

748

and the court admitted the same over the objection of the defense.

The rule is that evidence of other offenses cannot be produced. The evidence should be circumscribed to the prosecuted offense. But there is the exception that where the showing intended to be made, with the evidence of those other offenses, is the guilty knowledge with which the defendant acted in the prosecuted one, said evidence is admissible. See what the Supreme Court of California says on the subject in *People* v. *Gray*, 66 Cal. 271. It is as follows:

"On the trial of the case, the prosecution was allowed to prove, against the objectⁱons of the defendant, numerous other acts of embezzlement committed by the defendant, in addition to the one charged in the information; and this, it seems to us, is the most formidable objectⁱon to the proceedings taken on the appeal. It is claimed that no evidence can be introduced on behalf of the people respecting any other crime than that charged, and, as a general rule, such is undoubtedly so; but there are exceptions to this general rule. In the case at bar, the avowed object of the district attorney in introducⁱng evidence of other acts of embezzlement of public moneys by the defendant, was simply to prove a guilty knowledge and a criminal intent in the appropriation of the $700 described in the information; and there are numerous authorites holding that the evidence admitted is competent for that purpose. In Wharton on Evidence, Section 46, *et seq.*, it is saⁱd that where the party's guilty knowledge is involved, acts of a similar nature are admissible. (See also, Roscoe's Cr. Ev., pp. 88, 89, 90.)

"On an indictment for receiving stolen goods, evidence may be given of the receipt of several other stolen articles, for the purpose of proving guilty knowledge. (*State* v. *Goetz*, 34 Mo. 89.) So, where a party is indicted for forgery, and altering with a guilty knowledge a forged bⁱll of exchange, it was held that other forged bills found on the prisoner might be shown in evidence. (*Spencer* v. *Commonwealth*, 2 Leigh, 751.) On an indictment for an assaulty with intent to commit rape, previous assaults on the prosecutrⁱx, with similar intent, are competent evidence. (*Williams* v. *The State*, 8 Humph. 585.) So, on an indictment for administering sulphurⁱc acid with intent to kill horses, administering at different times for a like purpose was permitted to be shown. (*Rex* v. *Mogg*, 4 C. & P., 364.)

Where a person is indicted for malic ously shooting, Mr. Russell says that proof may be given that the prisoner at another time intentionally shot at the same person. (On Crimes, vol. 2, p. 777.) 'Evidence of another act of embezzlement by the defendant, during the same week in which that charged in the indictment was alleged to have been committed, was competent for the purpose of proving guilty knowledge.' (*Commonwealth* v. *Shepard,* 1 Allen, 581.) In case of murder by poisoning, evidence of previous acts of poisoning is admissible. (*Rex* v. *Goaring,* 18 L. J. 215; see also *King* v. *Wylie,* 1 Bos. & P. N. R. 92; *Rex* v. *Bleasdale,* 2 C. & K. 765. For the purpose of proving guilty knowledge, evidence is admissible that the defendant had previously passed similar counterfeit coins, although indictments therefor are pending. (*Commonwealth* v. *Stearns,* 10 Met. 256.) 'Although facts may be proved not connected with the transaction constituting the crime, to establish guilty knowledge, yet they are to be regarded as competent, because they tend directly to prove an essential element of the crime, to wit, guilty knowledge of a given fact.' (Per Church, C. J., in *Copperman* v. *The State of New York,* 56 N. Y. 592.) 'Whenever the intent or guilty knowledge of a party is a material ingredient in the issue of a case, then collateral facts, that is, other acts and declarations of a similar character, tending to establish such intent or knowledge, are proper evidence.' (*Frydam's Case,* 31 Gratt. 872. See also, *Coleman* v. *The State,* 58 N. Y. 555; *Shriedley* v. *State,* 23 Ohio St. 130.) Such evidence is deemed admissible, whenever it is necessary to establish guilty knowledge.

"There are other cases to which reference might be given, but the foregoing will suffice to show that there are exceptions to the rule which confines the evidence in a criminal prosecution of the precise case on trial."

The question is not a new one in this jurisdiction. It was studied in *People* v. *Juarbe,* 43 P.R.R. 428. It was decided therein that as an exception to the general rule "evidence of other offenses is admissible to show knowledge, intent, purpose, or plan."

There was no error in such an admission, and as to the limitation, in spite that it was not so requested, the court charged the jury of its own accord as follows:

"All the checks admitted in evidence, with the exception of that which is the object of the indictment, are under consideration of the jury only for the purpose of showing the intent of the defendant in cashing the check for $6.21 and this is to apply only in case the jury reaches the conclusion, beyond any reasonably doubt, that the defendant cashed said check and deprived The People of Puerto Rico of the sum of $6.21, appropr'ating said sum."

We shall study later the question of the refusal to admit the evidence offered by the defendant to show that he had not committed such offenses, inasmuch as such question is the same as the one, raised by reason of the refusal of certain evidence offered by the defendant to show that he had not committed the offense with which he was charged.

By the ninth assignment it is maintained that: "The court erred in rejecting the testimony of the witness Rodolfo Torres, showing that it was the custom in the office of the Superintendent of the Telegraph to cash the checks sent by the telegraph operators of the Island, so as to deposit to their corresponding accounts the general funds of the telegraph and those coming from telegraphic money orders, when the remittances corresponding to one and the other fund did not come separately, but embodied or included in only one money order or equivalent checks."

In our opinion, the rule of the court was justified, for the testimony of the witness could have only shown that checks had been cashed on other occasions, that is a fact that neither directly nor indirectly could defeat the charge made to the defendant of having appropriated the check for $6.21. The witness could have cashed the checks, and that fact notwithstanding, he could have deposited the money in the funds of The People, but that could not show that the check for $6.21 which the defendant deposited in his particular account in the Banco Popular was cashed and deposited in the American Colonial Bank in the account of The People.

The tenth error is argued in the brief together with the sixteenth. It is maintained by the tenth that the court erred

in rejecting the testimony of the telegraph operator Venegas regarding the fact that in December, 1925, he failed to remit ten dollars which he collected in his office of Mayagüez, on account of having delivered them to the Superintendent of the Telegraph, Manuel Rodríguez, with the latter's order to deduct the same from the remittance; and by the sixteenth, that the court erred in excluding the testimony of the witnesses Laborde, Landreau, Guzmán, and Moreno relating to delivery of funds of the telegraph made by them as telegraph operators, to the Superintendent Rodríguez which by his order they had failed to remit to the Bureau.

Arguing on the relevancy of those testimonies, the appellant insists that they should have been admitted, as they disclose illegal and criminal actions on the part of the Superintendent, his immediate superior, and asks: "Does not that action of the Superintendent discloses a moral corruption in his office, and is not it, at least, an attenuation of any illegal action of the accountant, to find himself bound to cover the criminal actions of his superior?"

We think that the court was justified in refusing to admit the testimony in question both because it was immaterial and because it tended to confuse the minds of the jury. The fact that other offenses of embezzlement might have been committed by other persons in the telegraph does not justify the perpetration of the one with which the defendant is charged in this action.

The seventeenth error is of the same nature as the ones we have just studied and decided, namely, those assigned with numbers 9, 10, and 16.

The assignment marked with number 11 is to the effect that the court erred in rejecting the testimony of the accountant Silvino Díaz, with respect to the outcome of his investigation.

In answer to the questions of the defense, the accountant began to explain the mechanism of the telegraphic money

752

orders, and what made up the fund of five thousand dollars advanced by the Government for their payment and how the same was handled. The following examination was finally put on:

"Q. Must that account be annually liquidated?

"A. It does not have to be liquidated annually; it is carried on. What he has to do annually is to refund the five thousand dollars advanced, but he receives them immediately.

"Q. Does the special disbursing officer receive five thousand dollars every year on the 1st of July?

"A. Yes sir.

"Q. And must he refund them to the Treasurer of Puerto Rico on June 30?

"A. Yes sir.

"Q. Do you have the documents showing the reimbursement of that fund of five thousand dollars to the Treasurer of Puerto Rico by the special disbursing officer, at the expiration of the fiscal year of 1925 to 1926?

"A. Yes sir.

Q. Can you produce them?"

The prosecuting attorney then intervened. The jury was ordered to leave. And the following took place:

"Prosecuting Attorney: We think that all this evidence and all this examination, as to the telegraphic money orders, and the mechanism, and documents requested, is entirely immaterial and irrelevant to the case we are trying. A check for $6.21 is herein involved. . . I would like to know the purpose of the evidence.

"Defense: I will explain it to you. The remittances made by the telegraph operators had two origins: either funds collected from telegrams and telephone calls, or from telegraphic money orders. These remittances are reported by separate documents, but as regards the remittance which was made towards the end of the month, although it came in separate reports, the checks therein sent might and did frequently come grouped together without separating the checks corresponding to money orders and those corresponding to telegrams. This check has been produced. We asked the telegraph operator of Coamo to say whether this check was remitted as a part of the telegraphic money orders or of telegrams. She could not say. She said that she did not know; at least she could not make it clear.

So we must go to the two accounts to show that both of them are complete. This evidence tends to show that if the defendant refunded to the Treasurer, towards the end of the fiscal year 1925–1926, the five thousand dollars he had received, which made up the fund of telegraphic money orders, he performed his duties as special d'sbursing officer and there was no appropriation, nor did he appropriate this check as a part of that fund.

"Prosecuting Attorney: But the fact is that the document which is produced as evidence cannot in the least prove what the defense intends to prove: That is why I said that this document is entirely immaterial and irrelevant.

"Judge: The court thinks that the evidence is immaterial, as the fact that th's account of telegraphic money orders is correct, does not destroy the *prima facie* case of the prosecuting attorney that the defendant may have appropriated the check in question.

"Defense: We take an exception to the decision of the court on the ground that the evidence for prosecution has not determined the fund from wh:ch the check of Otilia Rivera came, that is, whether the remittance she made proceeded from telegraphic money orders or from the general funds of the telegraph, and in this respect, the defense is entitled to prove that that check was not remitted by reason of telegraphic money orders or that it was not sent at all, although it is in the checking account and was deposited in the account of telegraphic money orders; and we announce to the court that we wish to produce that evidence in the presence of the jury.

"Judge: The motion is denied.

"Defense: We take an exception and without waiving the same, we are going to produce evidence out of the presence of the jury.

"Q. Witness, are these the documents for which the defense asked with respect to the deposit to the account of the Treasurer of Puerto Rico, of the amount of five thousand dollars from the bureau of telegraphic money orders?

"A. This was what was delivered to me by the Office of the Aud:tor.

"Q. Are those the documents to which the defense refers?

"A. Yes sir:

"Defense: We offer these documents in evidence.

"Prosecuting Attorney: We object on the grounds stated and appearing in the record: the documents are entirely immaterial.

"Judge: The court does not admit them for the foregoing reasons.

"Defense: Mark as Ex. 4-A, the certificate of the Treasurer and the Auditor acknowledging payment by José E. Pérez, the defendant, of the sum of five thousand dollars, to the Treasurer of Puerto Rico by season of telegraphic money orders; a copy of a letter from the Auditor to the Treasurer of Puerto Rico in connection with this matter; an abstract of disbursements; a certificate of the bookkeeper and chief of division of account of the Office of the Auditor; and the checking account of José Enrique Pérez as special disbursing officer of the Bureau of Insular Telegraph, with the Treasurer of Puerto Rico, concerning the telegraphic money orders, such account being duly approved by the Commissioner of Interior and the Auditor of Puerto Rico. Let them be marked exhibits A. to E. And we take an exception to the decision of the court on the grounds previously stated. For the sake of the record we wish to announce the following, so that the court will give a ruling: in relation with the months respecting which the prosecuting attorney has produced checks as evidence in corroboration of intent, the defense offers in evidence the same documents which have been produced in evidence in relation with the months of November and December, in order to prove that the accounts of the defendant are correct, that they agree with the summaries of the different telegraph operators of the Island which have been approved by the Auditor of Puerto Rico, and that the amount shown by those accounts, including the telegraph station from which the checks produced come, agrees with the account of the Treasurer of Puerto Rico in the American Colonial Bank.

"Prosecuting Attorney: We object on the same grounds appearing in the record.

"Judge: The decision is the same as that given as to the documents of November and December.

"Defense: We take the same exception on the same grounds previously stated."

This error and those assigned with numbers 12 to 15, which we shall examine forthwith, are the ones which make us hesitate in the decision of this case due to the fear of accepting as legal rulings those which might have rendered the accused defenseless.

Said errors from 12 to 15 are argued jointly in the brief of the appellant. They refer to the refusal of the court to admit in evidence the cash book which the defendant kept;

the summaries of the transactions of November and December, 1925, of the telegraph station of Coamo, as well as of the other stations of the Island; the accounts of November and December, 1925, of all the telegraphic stations of the Island, rendered by the Superintendent of the Telegraph to the Commissioner of the Interior and by the latter to the Auditor, and approved by the latter; and the voucher issued by the Treasurer of Puerto Rico to the Bureau of Insular Telegraph, acknowledging that the money received in the Bureau had been deposited in the American Colonial Bank as the income of the Telegraph during the months of November and December, 1925.

"The Court will see," says the defendant-appellant in his brief "that the rejected evidence was eminently material and pertinent to show that the defendant did not act fraudulently in depositing the check for $6.21 in his own checking account. . . . " And the prosecuting attorney maintains in his own that the evidence was not admissible as it had been prepared by the defendant himself to conceal his fraud.

The reason for the attitude of both parties and the delicate position of the court may be conceived without difficulty. The prosecuting attorney struggles to keep the criminal act charged away from any complication. The defense tends to extend the field of the investigation. The court, realizing its great responsibility, with the experience of the former happenings, aware of the risk of submitting a multiplicity of questions to the jury, attempts as far as possible to circumscribe the debate to its fundamental issue.

The important feature of the case is that regardless of the efforts that may be made, the fact imputed to the defendant becomes entangled in endeavoring to prove his guilty knowledge. The appropriation of the check is not sufficient by itself. It may constitute a mere irregularity if it was not effected with the intention to defraud and the amount thereof was deposited in the funds of The People. To show that

intent, the prosecuting attorney himself was bound to resort to evidence of other similar facts, on the basis that the systematic repetition thereof implied the fraud. But that would be so in case that all those other facts did not constitute mere irregularities but actual crimes. And according to the defendant the evidence involved not only tended to show the lack of criminal intent as regards the appropriation of the check for $6.21, but also of all the other similar appropriations as to which evidence for the prosecution was admitted, on the basis that even though the checks appeared as having been deposited in his particular account, the truth was the amount thereof had been deposited in the public treasury.

The trial was being held before a jury. The jury was the one to determine whether or not the appropriation of the check had been effected with the purpose of defrauding The People, and in our opinion the defendant was entitled to bring his evidence before it, and in not allowing that, the court erred in such a way that we feel ourselves bound to reverse its judgment, and to grant a new trial.

It is incumbent on the prosecuting attorney to show whether the evidence was fabricated, whether the fraud existed in reality. All the facts must go to the jury, so that its verdict may be the result of a conscious examination of the case which is submitted to its consideration and decision.

The remaining errors are those committed by the court, according to the defendant, in refusing to grant a new trial and in imposing the penalty. It will not be necessary to consider the same, in view of the decision to which we have just arrived. A new trial must be granted.

In order as to affirm the judgment, it might perhaps be maintained that from the very testimony of Silvino Díaz, the witness produced by the defendant to offer the evidence, the falsity thereof might be so clearly inferred that the error of the court might be classed as harmless, since once said evidence were submitted to the jury, the latter would neces-

sarily have decided that it had not the scope which the defendant seeks, his criminal intent remaining as something that arises from his own actions throughout the whole evidence adduced at the trial.

However, after a profound meditation, we think that we would be going too far if we would reach such a conclusion. It is not possible to predict with absolute certainty which would have been the decision of the jury, nor are we indeed in conditions to judge the full scope of the evidence. The appreciations of the witness Díaz might have been erroneous. The accounts, the books, and the reports should have been at the reach of the jury and the evidence for the prosecution should have shown how were they incorrect, or despite their apparent correction, the fraud charged. Only thus could the defendant have been convicted in accordance with the facts and the law.

By virtue thereof, the judgment appealed from must be reversed and a new trial granted.